FILED
2008 Mar-11  AM 11:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

FILED
2008 May-06  PM 06:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA,
EASTERN DIVISION

Civil Action Number: cv-08- 434

JENNIFER MARIE COTTON as dependant minor child of William
Eugene Cotton, II, who sues by and through her mother and next friend
PATRICIA ANNE COTTON,  and JESSICA MICHELLE COTTON as
dependant minor child of William Eugene Cotton, II, who sues by and
through her mother and next friend PATRICIA ANNE COTTON,

Plaintiffs,

vs.

AT&T Mobility, LLC (formerly known as Cingular Wireless, LLC),
ALT, INC., and WESTOWER COMMUNICATIONS, INC.,

Defendants.

## COMPLAINT

### STATEMENT OF SUBJECT MATTER JURISDICTION

1.       This Court has jurisdiction of the instant action pursuant to 28

U.S.C. § 1332 because complete diversity of citizenship exists as to all

parties and the amount in controversy exceeds the sum or value of seventy-

five thousand dollars ($75,000.00) exclusive of interests and costs.

### STATEMENT REGARDING RELATED ACTION

2.       This action arises from the wrongful death of William Eugene

Cotton, II who was killed as proximate result of the negligent and wanton

acts and omissions of AT&T Mobility, LLC (formerly known as Cingular

EXHIBIT
B
tabbies

Wireless, LLC), ALT, Inc., and WesTower Communications, Inc. This action is related to *Jennifer Marie Cotton etc. et al. v. ALT, INC.*, CV-06-BE-1486-E presently pending in the Northern District of Alabama before the Honorable Karen O. Bowdre.

3.        On or about October 10, 2007, the plaintiffs sought leave to amend their complaints in CV-06-BE-1486-E with a Second Amended Complaint which set forth facts and claims substantially identical to the instant complaint.

4.        The defendants filed separate objections to this motion setting forth the assertions that the proposed Second Amended Complaint contained "numerous new claims," "many new claims," and "additional claims."

5.        The Court, in the related action, denied the plaintiffs' motion for leave to amend finding that "the proposed Second Amended complaint does expand and/or add to the claims set forth in the original Complaint and First Amended Complaint," and that the plaintiffs "failed to demonstrate good cause for amending the complaint" beyond the deadline set in its scheduling order.

6.        While the plaintiffs assert that there is but a single cause of action for wrongful death in Alabama and that, pursuant to Rule 8 of the Federal Rules of Civil Procedure, they adequately plead this cause of action

2

against all defendants in CV-06-BE-1486-E, they file the instant action to preserve any and all new or additional claims which are not at issue in CV-06-BE-1486-E.

7.      The instant action is filed within two years of March 10, 2006 and within the applicable statute of limitations for wrongful death actions in Alabama. See Ala. Code (1975) § 6-5-410.

## I.     INTRODUCTION

8.  Plaintiffs Jennifer Marie Cotton and Jessica Michelle Cotton bring this action against the Defendants for the wrongful death of their father William Eugene Cotton. This action is brought by Plaintiffs, by and through their mother and next friend Patricia Anne Cotton, pursuant Ala. Code (1975) §25-5-11 and under §6-5-410 against the defendants ALT, Inc., WesTower Communications, Inc., and AT&T Mobility (formerly known as Cingular Wireless, LLC) for the death of William Eugene Cotton, II.

9.  On or about March 10, 2006, William Eugene Cotton, II was killed in the line and scope of his employment with Betacom, Inc., a non-party, when an eight foot, forty to sixty pound directional antenna fell from approximately two hundred and sixty (260) feet and struck him upon his head, neck and shoulders. Cotton's death was the actual, direct and proximate consequence of the wrongful acts and omissions of the

3

Defendants ALT, Inc., WesTower Communications, Inc. and Cingular Wireless, LLC.

10. Plaintiffs bring claims against the defendants based on the negligence and wantonness of ALT, Inc., WesTower Communications, Inc., and Cingular Wireless, LLC including:  COUNT ONE, Negligence and Wantonness against ALT, Inc.; COUNT TWO, Negligent and Wanton Failure to Provide a Safe Workplace against ALT, Inc.; COUNT THREE, Res Ipsa Loquitor against ALT, Inc.; COUNT FOUR, Negligence and Wantonness against WesTower Communications, Inc.; COUNT FIVE, Failure to Provide a Safe Workplace against WesTower Communications, Inc.; COUNT SIX, Negligence and Wantonness against AT&T Mobility (formerly known as Cingular Wireless, LLC) and COUNT SEVEN, Negligent and Wanton Failure to Provide a Safe Workplace against A&T Mobility (formerly known as Cingular Wireless, LLC).

## PARTIES

11. Plaintiffs adopt and re-allege the previous paragraphs as if fully stated herein.

12. Plaintiffs Jessica Michelle Cotton and Jennifer Marie Cotton are the minor dependant children of the deceased, William Eugene Cotton, II

4

(hereinafter "Cotton"). They bring this action by and through their mother and next friend Patricia Ann Cotton.

13. Defendant ALT, Inc. (hereinafter "ALT") is a corporation organized under the laws of the State of Missouri and has its principal place of business in Grain Valley, Missouri. ALT was at the time of Cotton's death and continues to be engaged in the business of installation, modification, construction and testing of telecommunication towers, antennas, and their component parts. At the time of Cotton's death, ALT was engaged by the defendants WesTower Communications Inc. and Cingular Wireless, LLC to replace antennas upon a four hundred and twenty foot "guyed" cellular tower in Talladega, Alabama, (hereinafter "tower" or "the tower site").

14. Defendant WesTower Communications, Inc. (hereinafter "WesTower") is a corporation organized under the laws of the State of Delaware and has its principal place of business in a State other than Alabama. At the time of Cotton's death, the defendant WesTower was engaged by the Defendant Cingular Wireless, LLC to perform work related to an upgrade of the tower site, which included the removal and installation of new Directional Cellular Antennas ("Antennas"), Tower Mounted Amplifiers ("TMAs") and other equipment. At all times relevant to the acts

5

and omissions described herein, Defendant WesTower was the master and
employer of Defendant ALT.

15. Defendant AT&T Mobility, LLC formerly known as Cingular
Wireless, LLC (hereinafter "Cingular") is a Limited Liability Company
organized under the laws of the State of Delaware and has its principal place
of business in the State of Georgia. Defendant Cingular is a mobile phone
and data service provider, which was the operator of the tower site where
Cotton was killed. Defendnat Cingular, hired Defendants WesTower and
ALT to perform tower antenna upgrades or modifications at the tower site.
At or near the same time, Defendant Cingular also contracted with Cotton's
employer Betacom, Inc., for Betacom to perform work related to installation
of cellular, radio and/or wireless equipment inside and enclosed structure
located at the foot of the subject tower.

## FACTS

16. Plaintiffs adopt and re-allege the previous paragraphs as if fully
stated herein.

17. On or about the March 10, 2006, while working in the line and scope
of his employment with Betacom, the decedent William Eugene Cotton, II
("Cotton") was killed when a eight foot antenna weighing between forty and

6

sixty pounds fell from a height of more than two hundred and sixty (260) feet and struck him about his head, neck and shoulders.

18. Prior to being struck and killed, Cotton had been working within the enclosed structure located at the foot of the subject tower.

19. At the time of Cotton's death, Defendant ALT, by and through its employees, agents and servants Josh Cook, Adam Waterman and Matthew Deadmond, were in the process of simultaneously lowering, two (2) separate eight (8) foot Directional Antennas weighing between forty and sixty pounds, and at least one TMA, along with other equipment.

20. The method and manner which Defendant ALT utilized to lower this material, including the actual antenna which ultimately struck and killed Cotton, was unreasonably dangerous in that it did not provide the ALT tower crew adequate or reasonable control over the movement of the Antennas, TMA or other materials being lowered from the tower at considerable height. Moreover, the method and manner which ALT utilized in its selection, maintenance and control over the rigging system, ropes and other devices used for lowering these objects was in itself unreasonably dangerous in that their use created the foreseeable risk of failure of the certain "short ropes" which were used to hoist and/or lower the Antennas and/or TMAs or other equipment from the tower.

7

21. Said method and manner of lowering Antennas, TMAs and other equipment from such height created an unreasonable and avoidable hazard for all individuals working at the Talladega tower site, and the foreseeable risk that the "short ropes" being utilized by the ALT crew were likely to fail.

22. During the lowering of the subject antenna, the Defendant ALT negligently and/or wantonly selected and utilized a "short-line" rope which it created from either cutting into smaller lengths or using previously cut up lengths of a 100 foot length of polypropylene "diamond braid" rope or cord which it had previously purchased from a Lowe's home improvement store in Mobile, Alabama.

23. Defendant ALT's use of improper equipment and improper methods was caused, in part, by ALT's failure to use ordinary and reasonable care in the training and supervision of its agents, employees and servants including ALT's failure to train and supervise tower crew members Josh Cook, Adam Waterman, Matt Deadmond and ALT's purchaser of said rope, Nathan Ross.

24. At the time Defendant ALT purchased the subject polypropylene rope or cord, it was accompanied by a tag which contained the clearly-worded, readable warning that accordingly could be comprehended and heeded by ordinary persons exercising ordinary care, and which stated in pertinent part:

8

WARNING ... DO NOT USE THIS PRODUCT FOR
OVERHEAD LIFTING ... OR OTHER SITUATIONS
WHERE PERSONAL SAFETY OR VALUABLE
PROPERTY CAN BE ENDANGERED .... MISUSE CAN
RESULT IN SERIOUS INJURY OR DEATH.

25. Despite the clear meaning and admonition of the attached Warning
label, ALT willfully and recklessly misused the rope or cord in a method and
manner for which it was not intended by the manufacturer and simply chose
to ignore the warning, thereby causing and allowing the subject rope to
ultimately be used by the subject ALT crew members in a manner which in
turn caused it to fail and which ultimately result in the death of Cotton.

26. ALT's failure to use reasonable care and appropriate or approved
methods in lowering and/or raising the Antennas, TMAs and other material
on the subject tower caused the subject and misused "short-line" to rub
against the tower, objects located on or attached to the subject tower, or
other ropes or items contained or utilized in the ALT crew's hoisting system.
Further, the method and manner chosen by the ALT crew to lower the
subject antennas, TMAs and other material further caused the braided outer
jacket of the subject rope or cord to abrade in such a way that the braided
outer jacket was caused to burn, scorch or melt, which in turn thereby
exposed the unbraided and unwound interior materials to be even further

9

subjected to and more susceptible to continued abrasion which in turn ultimately caused its failure and resulted in Cotton's death.

27. Defendant ALT knew or should have known that its use of the subject "short-line" coupled with its hoisting/lowering methods were likely to cause materials such as the subject antenna to break lose, fall and thereby cause serious injury including death.

28. Nevertheless, Defendant ALT negligently, wantonly and willfully failed to provide its employees with the methods and manner of hoisting/lowering equipment from towers such as the Talladega site, and further negligently, wantonly and willfully failed to provide its employees with the appropriate equipment, including, but not limited to the proper type of "short ropes" necessary to protect the life, health and safety of others including Cotton.

29. At all times prior to Defendant ALT's work to hoist/lower equipment from the subject tower, Defendant ALT was aware and even possessed the proper equipment including nylon rope slings and ropes manufactured and intended for use in overhead lifting. In fact, these very items were readily available to the subject ALT crew and were a feasible alternative to the polypropylene rope or cord used to fashion the "short lines", whose inevitable failure caused Cotton's death.

30. Prior to and up to the time of Cotton's death, ALT had been employed by Defendants WesTower and Cingular to perform the task of removing and upgrading the Antennas, TMAs and other equipment on the subject cell tower.

31. The process of removal and installation of Antennas, TMAs and other equipment to and from the height of their location on the subject tower created or substantial risk of serious injury and death. These risks and dangers created were both inherent and intrinsic to the type of work ALT ultimately performed on the subject tower, and for which Defendants WesTower and ALT were ultimately employed by Defendant Cingular, particularly as it related to the removal of, lowering of or raising of objects such as Antennas, TMAs or other items overhead and at such height.

32. At the time of Cotton's death, and throughout the planning for and performance of the upgrades to the tower site, Defendants ALT, WesTower and Cingular were "employers" within the meaning of Ala. Code (1975) § 25-1-1 in that they, separately and in concert with one another, exercised control and maintained the right of control or custody over the subject tower site and/or over all employees performing work therein.

33. In fact, throughout the planning and performance of the upgrade to the subject cell tower, Defendants Cingular, WesTower and ALT were

"employers" not just to Cotton and his co-workers with BetaCom, but were employers of all crane workers, fence contractors, building contractors, electrical contractors, heating and cooling contractors, telephone contractors, and all of their employees as defined by statute.

34. All of these employees remained under the control and/or were subject to the retention of the right of control exercised by Defendants Cingular, WesTower and/or ALT.

35. Throughout the time period of planning and performing the upgrade to the subject cell tower, Defendant Cingular and WesTower regularly visited the subject tower site, exercised control over, and retained the right of control over the actions of Defendant ALT, and its employees, as well as all other sub-contractors and their employees.

36. In fact, throughout this same time period, Defendant Cingular, by and through its representatives and agents, repeatedly exerted pressure on Defendants WesTower and ALT, and their respective employees, as well as other sub-contractors and their employees, to perform their respective duties at a hurried and unreasonably dangerous pace.

37. As a direct and proximate result of the pressure placed upon Defendants WesTower and ALT, and their employees, along with other contractors and their employees, Defendant Cingular's hurried and

12

unreasonably dangerous work pace created an unreasonably dangerous hazard to Cotton and to other workers present at the subject tower site.

38. Specifically, Defendant Cingular insisted that Defendants WesTower and/or ALT perform the overhead detachment, removal and replacement of Antennas, TMAs and other items at extreme heights at the same time that it knew or should have known that work at the base of the tower was to be performed by Betacom, its employees, and other subcontractors and their employees. Defendant Cingular's insistence upon its unreasonably dangerous schedule or pace for completion, further constituted reckless, willful and conscious disregard for maintaining a safe workplace as required of employers under Ala. Code §25-1-1, and placed both Cotton and other workers in substantial danger of serious injury or death.

39. Furthermore, as the owner and/or operator of the subject tower site, Defendant Cingular owed both a legal and contractual duty to exercise reasonable care in its management and control of the tower site project.

40. Nevertheless, and through its own reckless insistence on an unreasonably dangerous pace of the upgrade to be performed on the subject cell tower, Defendant Cingular's acts and omissions constituted a willful disregard for the risk created by its unreasonable demands on the subcontracted companies' performance of their duties, and as a proximate

result thereof, created an unreasonably dangerous overhead hazard that ultimately resulted in Cotton's death.

41. Defendant Cingular was under a further legal and contractual duty whereby it was charged with the supervision of all work performed by Defendants ALT and WesTower, and their employees, as well as all other subcontracted entities and their employees, to ensure that the upgrades being performed on the subject cell tower were conducted in a reasonably safe manner.

42. Defendant Cingular knew or at the very least should have known that Defendants ALT and WesTower were in fact not performing their work in a reasonably safe manner and that the nature of their work and the manner in which they were performing their work necessarily created unreasonably dangerous and unnecessary hazards to employees of other contractors and companies working on the tower site.

43. In addition to Defendant Cingular's visits to the subject work site, Defendant WesTower voluntarily undertook the duty to inspect the equipment and methods utilized by Defendant ALT in the raising and lowering of Antennas, TMAs and other equipment from the subject tower. Defendant WesTower was under both a legal and a separately defined contractual duty to supervise the actions of Defendant ALT and its crew

14

members, and to regularly inspect the tower site, including the equipment and methods used by ALT and its crew members, in their work to detach, raise and lower Antennas, TMAs and other material to and from the subject cell tower.

44. Defendant WesTower negligently and wantonly failed to exercise reasonable care in the performance of either its legal or contractual duties to manage and inspect the work of Defendant ALT at the subject tower site, including its maintenance of equipment and the methods employed by Defendant ALT in its work to detach, raise and/or lower Antennas, TMAs or other material from the subject cell tower.

45. Defendant WesTower knew or should have known that Defendant ALT was utilizing equipment, including the subject polypropylene rope or cord as a form of "short-line," which it knew or should have known was not reasonably safe for the particular use in the raising and lowering of these items to or from the subject tower. Defendant WesTower also knew or should have known that the methods employed by Defendant ALT violated the specific terms and conditions of its own contract with Defendant ALT regulating safe work practices, including, but not limited to the requirement that all loads being raised or lowered to or from the tower site be properly "tagged", which in this particular instance it was not.

46. In fact, in the days leading up to the incident resulting in Cotton's death, Defendant WesTower voluntarily and/or pursuant to the terms of its contract with Defendant ALT, undertook to inspect the equipment contained in the ALT crew's vehicle which included the bin(s) which contained the subject polypropylene rope or cord which was being used as "short-line."

47. In the performance of said inspection(s), WesTower knew or, in the exercise of reasonable care, should have known, that ALT was using and intended to use the subject polypropylene rope or cord as "short-line" for the specific purpose of hoisting and/or lowering material on the tower, and that ALT's use of the subject "short-line" in this manner was unsafe, unreasonably dangerous, and likely to cause serious injury or death to persons working near the tower site.

48. Moreover, in the performance of Defendant WesTower's inspection(s), WesTower knew or should have known that the hoisting method employed by ALT violated the terms of ALT's contract with WesTower with respect to the requirements for safe hoisting methods, in particular that loads being hoisted or lowered to the subject tower be "tagged".

49. Defendants ALT, WesTower and Cingular, individually and in concert, failed to comply with their own safety standards and with other

16

recognized standards for the operation, use, construction and retrofitting of telecommunications towers.

50. Defendants ALT, WesTower and Cingular, individually and in concert, failed to comply with applicable Federal regulations and standards including regulations and guidelines promulgated by the United States Occupational Health and Safety Administration.

## COUNT ONE
## DEFENDANT ALT, INC.

### NEGLIGENCE AND WANTONNESS

51. Plaintiffs adopt and re-allege the previous paragraphs as if fully stated herein.

52. Defendant ALT was under a legal and contractual duty to exercise reasonable and ordinary care in the method and manner in which it performed work at the Talladega tower site where Cotton was killed, in particular, the manner and method in which it raised and/or lowered Antennas, TMAs and other materials to or from the subject tower.

53. Defendant ALT also had an affirmative duty to warn Cotton and others that it intended to lower Antennas, TMAs or other equipment from the subject tower and to warn Cotton and others of the dangers created by ALT's method and manner of its performance of the work at the tower site.

17

54. Defendant ALT breached its duties of reasonable and ordinary care along with its affirmative duty to warn in that it:

    a. Utilized improper and unreasonably dangerous methods to raise and lower Antennas, TMAs and other equipment to and from the subject tower;

    b. Utilized improper equipment, including the subject polypropylene rope or cord in the form of "short-lines," for the purpose of hoisting or lowering Antennas, TMAs or other equipment at the tower;

    c. Failed to use safe and reasonable practices to control loads being removed from the tower, including the Antenna which fell, struck and killed Cotton, such that the load and or the ropes and/or "short-line(s)", used for this purpose were caused to come in contact with the tower, other ropes, and/or the lowered equipment or other equipment or material attached to the tower;

    d. Failed to use safe and reasonable practices to safely remove or appropriately alter the direction of the load or any component part of same, such that the load or any of its components, would further avoid contact with the subject tower, contact with the

18

load's various other ropes, equipment, cords and/or "short-

line(s)" or with any other item(s);

e. Failed to use reasonable care in the purchase, storage and

discarding of equipment, such that improper equipment,

including the subject "short-line", was caused or allowed to be

used in the first place;

f. Failed to warn Cotton and others that it was performing

overhead work, specifically that it would be lowering and/or

raising Antennas, TMAs or other material, on the date of

Cotton's death and/or just prior to the commencement of its

lowering of such materials, or otherwise failing take reasonable

precautions to ensure that Cotton and others were not invited

into danger;

g. Failed to exercise reasonable caution in its observance of the

load(s), including the subject antenna, as it was being lowered

from the tower;

h. Failed to use reasonable care in the training, supervision and

control of its employees;

i. Failed to utilize material and equipment that met or exceeded

accepted industry standards; and,

19

j.  Failed to abate the hazards created by its tower crew work on

the subject tower.

55. In addition to Defendant ALT's failure to use ordinary care as
described above, Defendant ALT's action and/or omissions were further
done with both willful and conscious disregard for the safety of others, in
particular persons working at or near the base of the subject tower, including
Cotton.

56. Defendant ALT's failure to use ordinary and reasonable care, and/or
its willful and conscious disregard for the safety of others was the actual,
proximate and direct cause of Cotton's death.

57. Defendant ALT's wrongful acts and omissions concurred, combined
and coalesced with the wrongful acts and omissions of Defendants
WesTower, Cingular and others, such that Defendant ALT's acts and/or
omissions, whether the product of negligence or wantonness, caused or
contributed to the cause Cotton's death.

58. Along with WesTower and Cingular, the Defendant ALT is jointly
and severally liable for the death of Cotton.

59. With regard to its liability for its negligent and/or wanton acts or
omissions, ALT is liable for the tortious acts and omissions of its employees,
agents and servants under the doctrine of respondeat superior including, but

20

not limited to, the negligent and wanton acts or omissions of its servants

Josh Cook, Adam Waterman, Matt Deadmond, Jeff Silva, Nathan Ross, and

Robert Camp.

WHEREFORE, Plaintiffs demand judgment against Defendant ALT for

its negligent and/or wanton acts/omissions for the wrongful death of William

Eugene Cotton, II and seek damages from Defendant ALT pursuant to Ala.

Code (1975) §§ 6-5-410 & 25-5-11 in an amount to be determined by a

jury.

## COUNT TWO:
## DEFENDANT ALT, INC.

### NEGLIGENT AND WANTON
### FAILURE TO PROVIDE A SAFE WORKPLACE

60. Plaintiffs adopt and re-allege the previous paragraphs as if fully

stated herein.

61. At all times pertinent to this suit, Defendant ALT possessed control

and/or custody over the Talladega tower site where Cotton was killed.

62. Pursuant to Ala. Code (1975) §25-1-1, et seq., Defendant ALT was

under a legal duty to ensure the Talladega tower site where Cotton was

killed was reasonably safe for others.

63. Furthermore, pursuant to its contractual obligations set forth in its

agreement with Defendant WesTower, Defendant ALT was contractually

21

obligated to ensure the Talladega tower site where Cotton was killed was reasonably safe for others.

64. Pursuant to both its legal and contractual duty(ies), Defendant ALT was obligated to do everything reasonably necessary to protect the life, health and safety of Cotton and others.

65. Nevertheless, Defendant ALT negligently and/or wantonly breached said legal and contractual duties.

66. Defendant ALT's negligent and/or wanton breach of these legal and/or contractual duties include the following:

> a. ALT failed to exercise reasonable care in the control of the job site so that others, including Cotton, were caused or allowed to be present when material was hoisted and lowed on the tower;
>
> b. ALT failed to exercise reasonable care in the selection and use of equipment used to hoist and lower material on the tower;
>
> c. ALT failed to exercise reasonable care in the selection and use of methods to hoist and lower material on the tower;
>
> d. ALT failed to exercise reasonable care in the placement of barricades, signs and other warnings designed to protect against others, including Cotton, from unknowingly walking into a hazardous situation; and,

22

e. ALT failed to exercise reasonable care in that it failed to supply

its employees with two-way radios or any other reasonable

forms of communication devise that could have alerted Cotton

and others of the hazards ALT created; and,

f. ALT failed to provide a reasonably safe method for ingress and

egress to and from the tower site and/or structure.

67. Said negligence and wantonness by Defendant ALT was the actual,

proximate and direct cause of Cotton's death.

68. Said wrongful acts and omission were done with a reckless or

conscious disregard for the safety of others including Cotton.

69. ALT's wrongful acts and omissions concurred, combined and

coalesced with the wrongful acts and/or omissions of Defendants

WesTower, Cingular and others, to cause or to contribute to cause Cotton's

death.

70. Together with Defendants WesTower and Cingular, Defendant ALT

is jointly and severally liable for the death of Cotton.

71. Defendant ALT is liable for the tortious acts and omissions of its

employees, agents and servants under the doctrine of respondeat superior

including, but not limited to, the negligent and wanton conduct of its

servants Josh Cook, Adam Waterman, Matt Deadmond, Jeff Silva, Nathan Ross, and Robert Camp.

WHEREFORE, Plaintiffs demand judgment against Defendant ALT for its negligent and/or wanton acts/omissions for the wrongful death of William Eugene Cotton, II and seek damages from Defendant ALT pursuant to Ala. Code (1975) §§ 6-5-410 & 25-5-11 in an amount to be determined by a jury.

### COUNT THREE:

### DEFENDANT ALT, INC.

### RES IPSA LOQUITOR

72. Plaintiffs adopt and re-allege the previous paragraphs as if fully stated herein.

73. Defendant ALT had full management and control of the six foot, forty to sixty pound antenna, which fell, struck and killed Cotton.

74. The circumstances of the incident, which killed Cotton are such that according to common knowledge and the experience of mankind, the accident would not have happened if those having control and management of the antenna had not been negligent.

75. The subject incident was the actual, proximate and direct cause of Cotton's injuries and death.

24

WHEREFORE, Plaintiffs demand judgment against Defendant ALT for its negligent and/or wanton acts/omissions for the wrongful death of William Eugene Cotton, II and seek damages from Defendant ALT pursuant to Ala. Code (1975) §§ 6-5-410 & 25-5-11 in an amount to be determined by a jury.

### COUNT FOUR:
### DEFENDANT WESTOWER, INC.

### NEGLIGENCE AND WANTONNESS

76. Plaintiffs adopt and re-allege the previous paragraphs as if fully stated herein.

. 77. Defendant WesTower was under a legal duty to exercise reasonable and ordinary care in its exercise of control and supervision and/or its maintenance of its right of control and supervision over the work performed at the Talladega tower site, including the control and supervision of its agent and servant, Defendant ALT, Inc. and its tower crew.

78. Defendant WesTower was also under a contractual duty whereby it undertook to exercise control and supervision and/or maintain the right of control and supervision over the work performed at the Talladega tower site, including the control and supervision of its agent and servant, Defendant ALT, Inc. and its tower crew.

79. Specifically, Defendant WesTower voluntarily undertook and was contractually obligated to conduct routine safety inspections of the Talladega tower site, including inspection of the equipment and methods utilized by Defendant ALT to raise and lower Antennas, TMAs and other equipment on the subject cell tower.

80. Defendant WesTower was therefore under both the legal and contractual duty to exercise reasonable care and skill in the manner in which it inspected said tower site, including specifically the equipment and hoisting and lowering methods being employed by Defendant ALT.

81. Defendant WesTower was further under a legal and contractual duty to adequately and appropriately warn others, including Cotton, when work was to be performed overhead, specifically as it was being performed on March 10, 2006, and to protect persons such as Cotton and others from walking into danger.

82. Defendant WesTower's contractual and legal duties were for the express or implied benefit of Cotton and others similarly situated.

83. Nevertheless, Defendant WesTower negligently and wantonly breached its legal and contractual duties as follows:

26

a. WesTower negligently and wantonly supervised the actions of
ALT including the actions of Josh Cook, Adam Waterman and
Matt Deadmond;

b. WesTower negligently and wantonly inspected and/or
negligently and wantonly failed to inspect the equipment and
methods used to raise and lower material from the subject
tower;

c. WesTower negligently and wantonly failed to warn Cotton of
dangers known to WesTower and hidden from Cotton; and,

d. WesTower negligently and wantonly exercised control and/or
negligently and wantonly retained the right of control the job
site so that others, including Cotton, were caused or allowed to
be present when material was hoisted and lowed on the subject
tower.

84. Said negligent and wanton acts and omissions were the actual,
proximate and direct cause of Cotton's death.

85. Said wrongful acts and omissions were done with a willful, reckless
and conscious disregard for the safety of others including Cotton.

86. WesTower's negligent and wanton acts and omissions combined,
concurred and coalesced with the wrongful acts and omissions of

27

Defendants ALT and Cingular and others to cause or to contribute to cause Cotton's death.

87. Together with Defendants ALT and Cingular, Defendant WesTower is jointly and severally liable for the death of Cotton.

88. Defendant WesTower is also vicariously and legally responsible for the tortious acts and omission of its servants including, but not limited to, the negligent and wanton acts of Defendant ALT, by and through its agents and employees, Josh Cook, Adam Waterman, Matt Deadmond, Jeff Silva, Nathan Ross, and Robert Camp, as well as its direct employees Jeremy Porch, Joe Williams, and Philip Cassel.

WHEREFORE, Plaintiffs demand judgment against Defendant WesTower for its negligent and/or wanton acts/omissions for the wrongful death of William Eugene Cotton, II and seek damages from Defendant WesTower pursuant to Ala. Code (1975) §§ 6-5-410 & 25-5-11 in an amount to be determined by a jury.

**COUNT FIVE:**
**DEFENDANT WESTOWER, INC.**

**NEGLIGENT AND WANTON**
**FAILURE TO PROVIDE A SAFE WORKPLACE**

89. Plaintiffs adopt and re-allege the previous paragraphs as if fully stated herein.

90. At all times pertinent to this suit, Defendant WesTower, via contractual agreement with Defendant ALT, possessed and/or reserved the right to exercise control or custody of the Talladega tower site where Cotton was killed.

91. Pursuant to Ala. Code §25-1-1, et seq., Defendant WesTower was under the legal duty to ensure that the tower site where Cotton was killed was reasonably safe for others.

92. Furthermore, pursuant to its contractually reserved right of control WesTower was under its own contractual obligation to ensure the Talladega tower site where Cotton was killed was reasonably safe for others.

93. Pursuant to said duty, Defendant WesTower was obligated to do everything reasonably necessary to protect the life, health and safety of Cotton and others.

94. Said duties were neither legally nor contractually delegable.

95. Nevertheless, Defendant WesTower negligently and wantonly breached said legal and contractual duties.

96. Defendant WesTower's negligent and/or wanton breach of these legal duties include the following:

    a. WesTower failed to exercise reasonable care in its supervision of subordinate contractors over whom it controlled and/or

retained the right to control, including, but not limited to, its decision to allow ALT to perform work overhead on the tower while others, including Cotton, were placed in danger of serious injury;

b. WesTower failed to exercise reasonable care in its inspection of the methods used by ALT to hoist and lower material on the tower;

c. WesTower failed to exercise reasonable care in the placement of barricades, signs and other warnings designed to protect others, including Cotton, from walking into danger;

d. WesTower failed to exercise reasonable and ordinary care in that at failed to supply the reasonable and necessary equipment needed under the circumstances;

e. WesTower failed to exercise reasonable and ordinary care to ensure the contracted obligations related to safe hoisting it imposed upon ALT were in fact followed by ALT or its crew members; and,

f. WesTower failed to provide a reasonably safe method of ingress and egress to and from the tower site and/or structure.

30

97. Said negligent and wanton acts and omission were the actual, proximate and direct cause of Cotton's death.

98. Said wrongful acts and omissions were done with a willfull, reckless and/or conscious disregard for the safety of others including Cotton.

99. Defendant WesTower's negligent and wanton acts and omissions combined, concurred and coalesced with the wrongful acts and omissions of Defendants ALT, Cingular and others to cause or to contribute to cause Cotton's death.

100.    Together with Defendants ALT and Cingular, Defendant WesTower is jointly and severally liable to Plaintiffs for the death of Cotton.

101.    Defendant WesTower is legally and vicariously liable for the tortious acts and omissions of its servants including, but not limited to, the negligent and wanton acts of Defendant ALT, by and through its agents and employees, Josh Cook, Adam Waterman, Matt Deadmond, Jeff Silva, Nathan Ross, and Robert Camp, as well as its direct employees Jeremy Porch, Joe Williams, and Philip Cassel.

WHEREFORE, Plaintiffs demand judgment against Defendant WesTower for its negligent and/or wanton acts/omissions for the wrongful death of William Eugene Cotton, II and seek damages from Defendant

31

WesTower pursuant to Ala. Code (1975) §§ 6-5-410 & 25-5-11 in an

amount to be determined by a jury.

### COUNT SIX:
### DEFENDANT CINGULAR WIRELESS. LLC

### NEGLIGENCE AND WANTONNESS

102.    Plaintiffs adopt and re-allege the previous paragraphs as if fully

stated herein.

103.    Defendant Cingular was under both a legal and a contractual

duty to exercise reasonable and ordinary care in its management, control and

supervision of the Talladega tower site, including the work of its servants

Defendants WesTower and ALT, and to ensure that the tower site was

reasonably safe.

104.    Cingular was also under both a legal and contractual duty to

adequately warn others, including Cotton, that materials were to be hoisted

or lowered to or from the tower, in particular on March 10, 2006, and was

under a duty to take the steps necessary to protect such persons from being

exposed to hazards created by this overhead work.

105.    Defendant Cingular's contractual and legal duties were for the

express or implied benefit of Cotton and others similarly situated.

106.    Because of the inherent and intrinsic dangers associated with

said work, said duties were neither legally nor contractually delegable.

32

107.    Nevertheless, Defendant Cingular negligently and wantonly breached these duties.

108.    Defendant Cingular's negligent and/or wanton breach of these legal and contractual duties include the following:

      a.  Defendant Cingular negligently and wantonly supervised the actions of Defendants WesTower and ALT including the actions of ALT's employees, Josh Cook, Adam Waterman and Matt Deadmond, and WesTower's employees, Jeremy Porch, Joe Williams, and Philip Cassel;

      b.  Defendant Cingular negligently and wantonly failed to adequately warn Cotton and others of dangers known to Defendant Cingular and hidden from Cotton and others; and,

      c.  Defendant Cingular negligently and wantonly exercised control and/or maintained the right of control over the subject job site so that others, including Cotton, were caused or allowed to be working in an unreasonably dangerous environment, particularly, when materials were hoisted and/or lowered to or from the subject tower while the only available path of ingress and egress to and from the tower site and/or structure was below a hoisted load.

109.   Said negligent and wanton acts and omission were the actual, proximate and direct cause of Cotton's death.

110.   Said wrongful acts and omissions were also done with a willful, reckless and conscious disregard for the safety of others including Cotton.

111.   Defendant Cingular's negligent and wanton acts and omissions combined, concurred and coalesced with the wrongful acts and omissions of Defendants ALT and WesTower and others to cause or to contribute to cause Cotton's death.

112.   Together with Defendants ALT and WesTower, Defendant Cingular is jointly and severally liable for the death of Cotton.

113.   Defendant Cingular exercised control and/or reserved the right to control the method and manner in which ALT, WesTower, Josh Cook, Adam Waterman, Matt Deadmond, and others performed work at the Talladega tower site including but not limited to control over the manner in which material was hoisted or lowered, the equipment used to hoist and lower, the timing of which material was to be hoisted and/or lowered, the placement of, or failure to place, adequate warnings and barricades at the tower, and control over the safety procedures observed at the tower site.

114.   Defendant Cingular is vicariously and legally responsible for the tortious acts and omissions of its servants including, but not limited to,

34

the negligent and wanton acts of Defendant ALT and its employees Josh

Cook, Adam Waterman, Matt Deadmond, and Defendant WesTower and its

employees, Jeremy Porch, Joe Williams, and Philip Cassel.

WHEREFORE, Plaintiffs demand judgment against Defendant

WesTower for its negligent and/or wanton acts/omissions for the wrongful

death of William Eugene Cotton, II and seek damages from Defendant

WesTower pursuant to Ala. Code (1975) §§ 6-5-410 & 25-5-11 in an

amount to be determined by a jury.

**COUNT SEVEN:**
**DEFENDANT CINGULAR WIRELESS, LLC.**

**NEGLIGENT AND WANTON**
**FAILURE TO PROVIDE A SAFE WORKPLACE**

115.     Plaintiffs adopt and re-allege the previous paragraphs as if fully

stated herein.

116.     Defendant Cingular retained and/or reserved the right to

exercise control or custody of the Talladega tower site where Cotton was

killed.

117.     Defendant Cingular was under both a legal and a contractual

duty to ensure that the tower site where Cotton was killed was reasonably

safe for others working there.

35

118.    Pursuant to said duty, Defendant Cingular was obligated to do everything necessary to protect the life, health and safety of Cotton and others.

119.    Said duties were neither legally nor contractually delegable.

120.    Nevertheless, Defendant Cingular negligently and/or wantonly breached said legal and contractual duties.

121.    Said negligence and wantonness included the following:

   a. Defendant Cingular failed to exercise reasonable care in its supervision of its contractors in allowing Defendant ALT to perform overhead work on the tower while others, including Cotton, were placed in danger of serious injury;

   b. Defendant Cingular failed to exercise or maintain its control or reserved right of control over its contractors, including Defendants ALT and WesTower, and said failure caused or allowed unsafe and unreasonably dangerous methods and equipment to be used in the hoisting and/or lowering of material from the subject tower;

   c. Defendant Cingular created and fostered a working environment where time and money took precedence over safety, and subcontractors including Defendants ALT and

36

WesTower were caused or permitted to perform their overhead
tower work at an unreasonable and dangerous pace;

d. Defendant Cingular failed to provide reasonable safeguards and
reasonable supervision to ensure that proper hoisting methods
and equipment were utilized;

e. Defendant Cingular failed to establish any procedures for
communication and coordination with, among and between
subcontractors to prevent employees of subcontractors from
working in a hazardous environment created by other
subcontractors;

f. Defendant Cingular failed to exercise reasonable care in the
placement of barricades, signs and other adequate warnings
designed to protect others, including Cotton, from walking into
danger;

g. Defendant Cingular failed, although it was contractually and
legally obligated to do so, to make reasonable inspections of the
premises, equipment and methods used at the tower site;

h. Defendant Cingular failed to exercise reasonable and ordinary
care in that at failed to supply the reasonable and necessary
equipment needed under the circumstances;

37

i.  Defendant Cingular failed to exercise even slight care in the management of the tower site so that a pattern of reckless behavior was allowed to foster such that persons and entities under the control of Defendant Cingular, including Defendants WesTower and ALT, by an through their respective employees, agents and/or servants, failed to abide by reasonable safety standards adopted by and among themselves, or to comply with applicable industry standards or applicable federal safety regulations; and,

j.  Cingular failed to provide a reasonably safe passage of ingress and egress to and from the tower site and/or structure.

122.   Said negligent and wanton acts and omission were the actual, proximate and direct cause of Cotton's death.

123.   Said wrongful acts and omissions were done with a reckless or conscious disregard for the safety of others including Cotton.

124.   Defendant Cingular's negligent and wanton acts and omissions combined, concurred and coalesced with the wrongful acts and omissions of Defendants ALT and WesTower and others to cause or to contribute to cause the Cotton's death.

38

125.     Together with Defendants ALT and WesTower, Defendant Cingular is jointly and severally liable for the death of Cotton.

126.     Defendant Cingular is legally and vicariously liable for the tortious acts and omissions of its servants including, but not limited to, the negligent and wanton acts of Defendant ALT, by and through the acts or omissions of its employees, agents or servants, Josh Cook, Adam Waterman, Matt Deadmond, Defendant WesTower, by and through the acts of omissions of its employees, agents or servants, Jeremy Porch, Joe Williams, and Philip Cassel, as well as for the negligent and/or wanton acts or omissions of its employees, agents or servants, Damon Depew, Don Stoehr, Gabe Gruszinski, and others.

WHEREFORE, Plaintiffs demand judgment against Defendant WesTower for its negligent and/or wanton acts/omissions for the wrongful death of William Eugene Cotton, II and seek damages from Defendant WesTower pursuant to Ala. Code (1975) §§6-5-410 and 25-5-11in an amount to be determined by a jury.

Respectfully submitted,

Dennis G. Pantazis
Edward McF. Johnson
Attorneys for the *Cotton*Plaintiffs

39

Of Counsel:
WIGGINS, CHILDS, QUINN AND PANTAZIS, LLC
The Kress Building
301 19th Street North
Birmingham, AL 35203
Telephone: 205-314-0500
Facsimile: 205-254-1500
dpantazis@wcqp.com
ejohnson@wcqp.com

_Clay Thomason_

Bill Thomason ASB-7576-s79j
Clay J. Thomason ASB-1418-a63t
Attorneys for the *Cotton* Plaintiffs

Of Counsel:
THOMASON-MAPLES, LLC
Post Office Box 627
Bessemer, AL 35021
Telephone: 205-428-0702
Facsimile: 205-428-7890
billthomason@t-mlaw.net
claythomason@t-mlaw.net

## JURY DEMAND

### PLAINTIFFS DEMAND
### TRIAL OF THIS CASE BY A STRUCK JURY

Of Counsel

40

SERVE DEFENDANTS AT:

AT&T Mobility, LLC
c/o CSC Lawyers Incorporating SEV INC
150 S. Perry Street
Montgomery, Alabama 36104

WesTower Communications, Inc.
c/o The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, Alabama 36109

ALT, Inc.
Attention: Jeff Silva
115A East Harris Street
Grain Valley, MO 64029

42