FILED

2008 Apr-23 PM 06:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| JENNIFER MARIE COTTON, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CV-08-JEO-0434-E |
| | ) |
| AT&T MOBILITY, LLC., *et al.*, | ) |
| | ) |
| | ) |
| Defendants. | ) |

## DEFENDANT AT&T MOBILITY, LLC'S MOTION TO DISMISS

COMES NOW Defendant AT&T Mobility, LLC ("Defendant") and, pursuant to

FED.R.CIV.P. 12, moves the Court to dismiss Plaintiffs' Complaint with prejudice. In further

support of its Motion, Defendant states as follows:

## STATEMENT OF UNDISPUTED FACTS

1.      On March 10, 2006, William Cotton died while working on a cellular phone

tower jobsite. *See generally*, Compl.

### THE FIRST ACTION

2.      Shortly thereafter, plaintiffs filed a wrongful death action in the Circuit Court of

Talladega County against, after amendment, Cingular Wireless, LLC ("Cingular"); ALT, Inc.

("ALT"); WesTower Communications, Inc. ("WesTower"); Crown Castle International Corp.;

Randall H. Bowe; Josh Cook; Matt Deadmon; and Adam Waterman asserting claims of

negligence, wantonness, premises liability and *res ipsa loquitor*.[1] *See* Exh. A, *Jennifer Marie*

*Cotton, et al. v. ALT, Inc., et al.*, CV-06-148, Compl.

---

[1] Plaintiffs' Complaint also attached a workers' compensation claim against BetaCom
Inc. *Id.*

EXHIBIT

3.      Plaintiffs' amended that Complaint on June 26, 2006. *See* Exh. B, *Jennifer Marie Cotton, et al. v. ALT, Inc., et al.*, CV-06-148, First Am. Compl.

4.      In July 2006, that state court action – less the workers' compensation claim eventually severed – was removed to and is presently pending in the Northern District of Alabama (the "First Action"). *See* Compl., ¶ 2 (citing *Jennifer Marie Cotton, et al. v. ALT, Inc., et al.*, CV-06-BE-1486-E).

5.      After removal, plaintiffs dismissed all defendants except for Cingular, ALT and WesTower from the First Action. *See* Exh. C, *Jennifer Marie Cotton, et al. v. ALT, Inc., et al.*, CV-06-BE-1486-E, Order (D.E. 30) (entered December 5, 2006); Exh. D, Order (D.E. 47) (entered May 15, 2007).

6.      On September 25, 2006, the court entered a Scheduling Order allowing plaintiffs until December 1, 2006, to amend the pleadings. *See* Exh. E, Scheduling Order, Part I-B (entered September 25, 2006).

7.      On October 4, 2007, more than 10 months after the Court's December 1, 2006, amendment deadline in the First Action, plaintiffs sought leave to amend their Complaint against Cingular, ALT and WesTower. *See* Compl., ¶ 3; Exh. F, *Jennifer Marie Cotton, et al. v. ALT, Inc., et al.*, CV-06-BE-1486-E, Motion for Leave to File Plaintiffs' Motion for Leave to Amend Complaint (attaching as Exh. A, the proposed Second Amended and Restated Complaint) (D.E. 83).

8.      The Second Amended and Restated Complaint proposed by plaintiffs was virtually identical to the Complaint ultimately filed in this action. *Compare* Exh. F, Motion for Leave to File Plaintiffs' Motion for Leave to Amend Complaint, Exh. A – Plaintiffs' Second Amended and Restated Complaint *with* Compl.

2

9. Because plaintiffs failed to demonstrate the good cause necessary to allow an amendment beyond the imposed deadline and because the proposed amendment "expand[ed] and/or add[ed] to the claims set forth in the original Complaint[,]" the Court denied plaintiffs' requested second amendment.[2] *See* Compl., ¶ 5; Exh. G, *Jennifer Marie Cotton, et al. v. ALT, Inc., et al.*, CV-06-BE-1486-E, Order (entered December 3, 2007).

## THE SECOND ACTION

10. Some five months after the denial of plaintiffs' tardy motion to amend and after considerable discovery in the First Action, plaintiffs filed this lawsuit (the "Second Action") asserting the identical expanded and "related" negligence, wantonness, premises liability and *res ipsa loquitor* claims against the identical defendants – Cingular, ALT and WesTower – already denied in the First Action. *Compare* Compl., ¶ 10 (outlining claims) *with* Exh. F, *Jennifer Marie Cotton, et al. v. ALT, Inc., et al.*, CV-06-BE-1486-E, Motion for Leave to File Plaintiffs' Motion for Leave to Amend Complaint, Exh. A – Plaintiffs' Second Amended and Restated Complaint, ¶3 (reciting, *verbatim*, claims asserted in rejected Complaint).[3]

11. Plaintiffs concede that the Second Action was brought for the sole purpose of "preserv[ing] any and all new or additional claims" which were not asserted in the First Action. Compl., ¶ 6.

## STANDARD OF REVIEW

---

[2] Notably, plaintiffs did not seek reconsideration of that denial or seek any possible appellate review.

[3] The legal theories in both actions are identical. The parties against whom they are asserted are, for all intents and purposes, equally identical. The only change was plaintiffs' substitution of AT&T Mobility, LLC for Cingular, made in recognition of AT&T's corporate succession to Cingular Wireless, LCC. *See* Compl. ¶ 10 (noting name change of company).

A motion to dismiss should be granted where "the plaintiff can prove no set of facts which would entitle him to relief." *Martinez v. American Airlines, Inc.*, 74 F.3d 247, 248 (11th Cir. 1996). In making this determination, the court must "take all the allegations in the complaint as true, and view the complaint in the light most favorable to the plaintiff." *Id.* However, to survive a motion to dismiss, a plaintiff may not merely "label" his claims. *Id.* "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Management, Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) (citations omitted).

Upon a motion to dismiss, the scope of the review is generally limited to the four corners of the complaint. *See St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002) (citations omitted). However, "the court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Pleadings from the First Action satisfy these requirements. To the extent they do not, Defendant alternatively requests that the Court take judicial notice of plaintiffs' related filings.

## INCORPORATED MEMORANDUM OF LAW

"As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit." *Curtis v. Citibank, N.A.*, 225 F.3d 133, 138-39 (2d Cir. 2000) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (holding that "[a]s between federal district courts, . . . the general principle is to avoid duplicative litigation."); *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991); *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977) (*en banc*)). "The complex problems that can arise from multiple federal filings do not lend themselves to a rigid test, but require instead that the

4

district court consider the equities of the situation when exercising its discretion." *Id.* (citing

*Colorado River*, 424 U.S. at 817; *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S.

180, 183-84 (1952) (affirming stay of declaratory judgment action on patent's validity in

Delaware while patent infringement suit in Illinois proceeded).

## I.   PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED AS AN INAPPROPRIATE ATTEMPT AT CLAIM SPLITTING.

The rule against claim splitting is distinct from but related to the doctrine of *res judicata*.

*Curtis*, 225 F.3d at 138. Dismissal of a duplicative lawsuit to disallow an attempt at claim

splitting fosters judicial economy and the "'comprehensive disposition of litigation.'"[4] *Id.*

(quoting *Kerotest Mfg.*, 342 U.S. at 183)). The doctrine is also meant to protect parties from "the

vexation of concurrent litigation over the same subject matter." *Id.* (quoting *Adam v. Jacobs*, 950

F.2d 89, 93 (2d Cir. 1991)); *see also*, 18 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE ¶

131.12[2], [4][a] (3d ed. 1999). Alabama has codified the concept and its federal courts have

extended the statute's application to diversity actions:

> No plaintiff is entitled to prosecute two actions in the courts of this
> state at the same time for the same cause and against the same
> party. In such a case, the defendant may require the plaintiff to
> elect which he will prosecute, if commenced simultaneously, and
> the pendency of the former is a good defense to the latter if
> commenced at different times.

ALA.CODE § 6-5-440; *see also Central Reserve Life Ins. Co. v. Kiefer*, 211 F.R.D. 445 (S.D. Ala.

2002) (recognizing applicability of statute to diversity actions in the absence of overriding

federal considerations); *Simmons v. Pulmosan Safety Equip. Corp.*, 471 F.Supp. 999 (S.D. Ala.

1979) (same).

---

[4] In addition to outright dismissal with prejudice of duplicative claims, a court facing claim splitting in a second suit may also stay that second suit, *see Kerotest Mfg.*, 342 U.S. at 186, or dismiss the duplicative suit without prejudice. *See First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir. 1989). ). In addition to these second-suit remedies, the court hosting the first-filed action can always enjoin the parties from proceeding with it. *See National Equip. Rental, Ltd. v. Fowler*, 287 F.2d 43, 45-46 (2d Cir. 1961).

It is clear that a motion to dismiss based on improper claim splitting need not – indeed, often cannot – wait until the first suit reaches final judgment. *See Hartsel Springs Ranch of Colorado, Inc. v. Bluegreen Corp.*, 296 F.3d 982, 987, n. 1 (10th Cir. 2002) (applying Colorado state law) (citing *Calderon Rosado v. Gen. Elec. Circuit Breakers, Inc.*, 805 F.2d 1085, 1087 (1st Cir. 1986) (recognizing that, if two suits based on same claim are pending, but defendant waits to file motion to dismiss until "after judgment enters on one of the two," then "the motion should be denied"); *Bockweg v. Anderson*, 428 S.E.2d 157, 164 n. 2 (N.C. 1993) (holding that "[w]hile it is clear that defendants could not raise their *res judicata* defense until and unless the [prior] court action resulted in a final judgment, defendants could have moved to dismiss on the grounds of a prior action pending involving the same claim."); *Lake v. Jones*, 598 A.2d 858, 861-62 (Md. 1991) (holding that "[defendant] may not lie in wait silently until one of the two actions is brought to judgment to ambush the plaintiff and defeat the other action." (quoting *J. Friedenthal et al.*, CIVIL PROCEDURE § 14.3 (1985)); RESTATEMENT (SECOND) OF JUDGMENTS § 26 cmt. a (1982) (stating that "[w]here the plaintiff is simultaneously maintaining separate actions based upon parts of the same claim, and in neither action does the defendant make the objection that another action is pending based on the same claim, judgment in one of the actions does not preclude the other plaintiff from proceeding and obtaining judgment in the other action.")).

In *Curtis*, the plaintiffs filed a second complaint while their appeal of the trial court's denial of their motion to amend the complaint in their first action was still pending. 226 F.3d 133, 136-38 (2d Cir. 2000). Recognizing that the second action was largely an attempt by the plaintiffs to avoid the result of her dilatory conduct – the denied amendment in the first action was filed two months after the close of discovery and more than one year after the deadline for amending – the Second Circuit affirmed the trial court's dismissal of those claims, recognizing that "plaintiffs may not file duplicative complaints in order to expand their legal rights." *Id.* at

6

140 (citing *Oliney v. Gardner*, 771 F.2d 856, 859 (5th Cir. 1985) (noting plaintiff's failure to notify court that second complaint was related to first, in which motion to dismiss was pending); *Walton*, 563 F.2d at 71 (recognizing plaintiff's filing of second complaint to evade waiver of jury trial in her first complaint); *cf. Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223-24 (7th Cir. 1993) (finding no abuse of discretion in dismissing second complaint despite possibility that first would be dismissed for untimely service)).

More recently in *Adams*, an applicant brought a state court civil rights and tort suit against the California Department of Health Services (CDHS) and certain CDHS employees when a conditional offer of employment was withdrawn. 487 F.3d 684, 686-88 (9th Cir. 2007). After that action was removed and well past the district court's amendment deadline, the plaintiff filed a motion for leave to amend her complaint to add both defendants and claims. *Id.* at 687. Finding that the plaintiff failed to demonstrate good cause for the undue delay in seeking leave to amend, and that granting her motion to amend would prejudice the defendants already named in her complaint, the district court denied her motion as untimely. *Id.*

After that denial, the plaintiff in *Adams* filed a second complaint setting forth the claims she had sought to add through her previously denied motion for leave to amend in the first case. 487 F.3d 687. In affirming the district court's determination that the plaintiff's newest complaint was duplicative of the previously filed complaint and, accordingly, should be dismissed with prejudice, the Ninth Circuit noted that the plaintiff's second complaint was nothing more than "an attempt to avoid the consequences of her own delay and to circumvent the district court's denial of her untimely motion for leave to amend her first complaint." *Id.* at 688. In holding that "'the fact that plaintiff was denied leave to amend does not give h[er] the right to file a second lawsuit based on the same facts,'" the court recognized that plaintiffs generally have "'no right to maintain two separate actions involving the same subject matter at the same time in the same

court and against the same defendant.'" *Id.* (quoting *Hartsel Springs Ranch of Colorado, Inc. v.*

*Bluegreen Corp.*, 296 F.3d 982, 989 (10th Cir. 2002); *Walton*, 563 F.2d at 70); *see also Serlin v.*

*Arthur Andersen & Co.*, 3 F.3d 221, 223-24 (7th Cir. 1993); *Oliney v. Gardner*, 771 F.2d 856,

859 (5th Cir. 1985); *Sutcliffe Storage & Warehouse Co. v. United States*, 162 F.2d 849, 851 (1st

Cir. 1947).

        *Curtis* and *Adams* are directly on point. Identically to *Adams*' refusal to allow its plaintiff

"to avoid the consequences of her own delay and to circumvent the district court's denial of her

untimely motion for leave to amend her first complaint[,]"plaintiffs here, *by their own admission*,

concede that the Second Action was brought only to "preserve any and all new or additional

claims" they were unable to include in the First Action. Compl., ¶ 6. Civil lawsuits are not to

preserve claims; instead, they are brought for specific relief, which in a personal injury matter

are money damages. As courts in Alabama recognize — and ALA.CODE § 6-5-440 mandates —

plaintiffs "may not file duplicative complaints in order to expand their legal rights[,]" and "the

fact that plaintiff was denied leave to amend does not" alter the analysis.  Undeniably, the

Second Action's claims — and the parties against whom they are asserted — are simply a verbatim

regurgitation of the claims rejected as a result of the First Action's denied amendment. *Compare*

Compl., ¶ 10 (outlining claims) *with* Exh. F, *Jennifer Marie Cotton, et al. v. ALT, Inc., et al.*,

CV-06-BE-1486-E, Motion for Leave to File Plaintiffs' Motion for Leave to Amend Complaint,

Exh. A – Plaintiffs' Second Amended and Restated Complaint, ¶3 (attempting to assert same

claims). Almost certainly then, once the First Action is resolved, the Second Action will be

precluded pursuant to claim preclusion. Such a result goes to the heart of claim splitting, and the

dismissal of plaintiffs' Second Action results only in judicial economy and protects the parties

from "the vexation of concurrent litigation over the same subject matter." To allow this Second

Action to go forward would encourage plaintiffs to wait until the amendment deadline has

expired and then file a second "safety net" lawsuit to preserve their claims. Such a strategy promotes a gaming of the system and runs counter to the objective of "secur[ing] a just, speedy, and inexpensive determination of every action and proceeding." FED.R.CIV.P. 1. Most simply, plaintiffs' Second Action is nothing more than an impermissible attempt to make an end-run around the First Action's Order denying plaintiffs the ability to amend. As such, their delayed conduct should not be rewarded and, instead, just as in *Curtis* and *Adams*, plaintiffs' Complaint should be dismissed with prejudice.

WHEREFORE, Defendant AT&T Mobility, Inc. respectfully requests that the Court dismiss plaintiffs' Complaint with prejudice as an improper attempt at claim splitting.

_____
One of the Attorneys for
Defendant AT&T Mobility

OF COUNSEL:
Patrick R. Norris
3300 Vestavia Centre
2090 Columbiana Rd.
Birmingham, AL 35216

Jere F. White
Madeline H. Haikala
Enrique J. Gimenez
Lightfoot, Franklin & White, L.L.C.
400 20th Street North
Birmingham, AL 35203

9

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been electronically filed on this the __23__ day of __April,__ 2008 with the Clerk of the Court using the CM/ECF system which will send notification of such filing upon the following. If Notice of Electronic Filing indicates that Notice needs to be delivered by other means to any of the following, I certify that a copy will be sent via U.S. Mail, properly addressed, postage prepaid.

Clay J. Thomason
Thomason-Maples LLC
P O Box 627
Bessemer, AL 35021
One of the Attorneys for Plaintiff

James A. Shands
205- 20th Street North
Suite 500
Birmingham, AL 35203
One of the Attorneys for Plaintiffs

M. Keith Gann
Joseph R. Duncan, Jr.
Huie, Fernambucq & Stewart, LLP
Three Protective Center
2801 Highway 280 South
Suite 200
Birmingham, AL 35223
Attorneys for WesTower Communications, Inc.

Charles P. Gaines
Lucius S. Gaines
GAINES, GAINES & RASCO
P. O. Box 275
Talladega, AL 35160
One of the Attorneys for Plaintiffs

OF COUNSEL

FILED
2008-Apr-23 AM 09:42
U.S. DISTRICT COURT
U.S. DISTRICT COURT ALABAMA
N.D. OF ALABAMA

IN THE CIRCUIT COURT
OF TALLADEGA COUNTY ALABAMA 2006 MAR 14 PM 2: 53

CIVIL ACTION NUMBER: CV06-_____ CLARENCE HAYNES
CIRCUIT CLERK

**CV2006-148 JMK**

JENNIFER MARIE COTTON as dependant minor child of William Eugene
Cotton, II, who sues by and through her mother and next friend Jennifer Marie
Cotton and JESSICA MICHELLE COTTON as dependant minor child of
William Eugene Cotton, II, who sues by and through her mother and next friend
Patricia Anne Cotton; PATRICIA ANN COTTON, individually,

Plaintiffs.

VS.

BETACOM INCORPORATED.; CINGLAR WIRELESS, LLC.; RANDALL H.
BOWE; and Fictitious Defendants 1-10 who are identified as follows: Fictitious
Defendants 1-5 are those persons, corporations or other entities that alone or under
contract or in concert, participation or joint venture with, or as the agents, servants
or employees of any named or fictitiously described defendant who negligently,
wantonly or willfully caused an object or objects to fall, strike and kill William
Eugene Cotton on March 10, 2006; Fictitious Defendants 6-10 are those persons,
corporations or other entities that alone or under contract or in concert,
participation or joint venture with, or as the agents, servants or employees of any
named or fictitiously described defendant who failed to reasonably or adequately
warn William Eugene Cotton and/or failed to exercise ordinary and reasonable care
to keep the premises safe; Fictitious Defendants 11-15 are those persons,
corporations or other entities, that alone or under contract, participation or joint
venture, any other named or fictitiously described defendant who are the employee
or master of the person or entity which caused the death of William Eugene Cotton
and are, by virtue of the doctrine of respondent superior, liable to Plaintiffs for the
negligence, wantonness, willfulness and/or failure to warn of said person or entity.
The Plaintiff avers that the names and identities of the fictitiously described
defendants are unknown, other than stated at this time, but that the proper parties
will be substituted by amendment when their names and identities as proper party
defendants are ascertained, ·

Defendants.

COMPLAINT

The Plaintiffs in their claims for benefits under the Alabama Workers
Compensation Act for the wrongful death of William Eugene Cotton ("Mr. Cotton")



**EXHIBIT**

**A**

Deceased and in their claim for damages, under §25-5-11 of the Code of Alabama of 1975, against Defendants other than against Mr. Cotton's Employer, state:

1.. Plaintiff, Jennifer Marie Cotton, is a minor dependant child of William Eugene Cotton, II, ("Mr. Cotton") and is a resident of Alabama. Jennifer Marie Cotton brings this suit through her mother and next friend, Patricia Anne Cotton.

2. Plaintiff, Jessica Michelle Cotton, is a minor dependant child of William Eugene Cotton, II, and is a resident of Alabama. Jessica Michelle Cotton brings this suit through her mother and next friend, Patricia Anne Cotton.

3. The deceased William Eugene Cotton, II, had no children other than the children named in this complaint. The Minor Plaintiffs are all of Mr. Cotton's heirs at law.

4. Defendant, Betacom Incorporated. ("Betacom") is a Florida corporation and does business by agent in the state of Alabama.

5. The Defendant Randall H. Bowe ("Bowe") is a natural person and a resident of the State of Florida. Bowe is the principal managing agent of Betacom.

6. Defendant Cingular Wireless, LLC ("Cingular") is a Corporation, organized under the laws of the State of Delaware, with its principal place of business in the State of Georgia.

7. Fictitious Defendants Fictitious Defendants 1-5 are those persons, corporations or other entities that alone or under contract or in concert, participation or joint venture with, or as the agents, servants or employees of any named or fictitiously described defendant who negligently, wantonly or willfully caused an object or objects to fall, strike and kill William Eugene Cotton on March 10, 2006.

8.   Fictitious Defendants 6-10 are those persons, corporations or other entities that alone or under contract or in concert, participation or joint venture with, or as the agents, servants or employees of any named or fictitiously described defendant who failed to reasonably or adequately warn Mr. Cotton and/or failed to exercise ordinary and reasonable care to keep the premises safe..

9.   Fictitious Defendants 11-15 are those persons, corporations or other entities, that alone or under contract, participation or joint venture, any other named or fictitiously described defendant who are the employee or master of the person or entity which caused the death of Mr. Cotton and are, by virtue of the doctrine of respondant superior, liable to Plaintiffs for the negligence, wantonness, willfulness and/or failure to warn of said person or entity.

10.   The Plaintiff avers that the names and identities of the fictitiously described defendants are unknown, other than stated at this time, but that the proper parties will be substituted by amendment when their names and identities as proper party defendants are ascertained.

### COUNT ONE – WORKERS COMPENSATION CLAIM AGAINST BETACOM INCORPORATED (TRAUMATIC ACCIDENT – MARCH 10, 2006)

11.   The Plaintiffs re-allege the allegations contained in paragraphs 1-10 and incorporate the same into this Count One as if set out in full herein..

12.   On or about March 10, 2006 Mr. Cotton was working within the line and scope of his employment with Betacom.

13   On said date Mr. Cotton was fatally injured while working at a cellular phone tower, located in Talladega County, Alabama. Said injury and death was caused

when a large object (or objects) fell from that a Cingular Communications Tower and struck and killed Mr. Cotton.

14. Betacom had timely notice and/or actual notice of said accident and fatality as provided by law.

15. Betacom has failed to pay all disability benefits to which the Minor Plaintiffs are entitled and it has conspired with the mother and siblings of Mr. Cotton to hinder, delay and/or prevent or diminish said Minor Plaintiffs' entitlement to benefits. A dispute exists between the Minor Plaintiffs and Betacom regarding the Minor Plaintiffs' entitlement to Worker's Compensation Benefits.

16. Pursuant to Ala.Code 1975 §25-5-59, the Defendants should be required to pay a 15% charge for unpaid installments of compensation due the Plaintiff.

17. Minor Plaintiffs and the Defendant, Beta-Com, Inc are subject to the Workers' Compensation Act of the State of Alabama, as amended.

WHEREFORE, the Plaintiffs demand judgment against Betacom for all compensation to which the said Minor Plaintiffs are entitled under Workers' Compensation Act of the State of Alabama, as amended.

Patricia Cotton

Patricia Anne Cotton, as mother and next friend of Plaintiffs Jennifer Marie Cotton Jessica Michelle Cotton

STATE OF ALABAMA        )
JEFFERSON COUNTY        )

BEFORE ME, undersigned, a Notary Public, appeared the Plaintiff, Patricia Anne Cotton, who being by me first duly sworn, deposed and said on oath that she is the mother of the minor Plaintiffs and she has read the foregoing Complaint, that the statements contained therein are true and correct, and that he executed the same voluntarily of his own free will.

WITNESS my hand and official seal of office this the 14th day of March, 2006.

NOTARY PUBLIC
My Commission Expires_____

## COUNT TWO – NEGLIGENCE AND WANTONESS CLAIM AGAINST CINGULAR and FICTITIOUS PARTIES 1-15

18.     The Plaintiffs re-allege the allegations contained in paragraphs 1-17 and incorporate the same into this Count Two as if set out in full herein.

19.     Cingular and Fictitious defendants 1-5 negligently or wantonly caused the foreign object(s) to fall from the tower and strike the decedent, Mr. Cotton and/or negligently or wantonness caused or contributed to cause the death of Mr. Cotton.

20.     Bowe willfully failed to provide shields or guards to the Mr. Cotton and/or otherwise willfully caused his death.

21.     Fictitious Defendants 11-15 are, as the employer or master of Fictitious Defendants 1-10 and, pursuant to the doctrine of respondent superior, they are vicariously liable for the death of Mr. Cotton.

WHEREFORE, the Minor Plaintiffs demand judgment against the Defendants for wrongful death of Mr. Cotton, in an amount to be determined by the trier of fact.

## COUNT THREE – PREMISES LIABLITY

22.     The Plaintiffs re-allege each and every allegation contained in paragraphs 1-21 and incorporate the same into this Count Three as if set out in full herein.

23.     Mr. Cotton entered the premises on which the tower sat at the express or implied invitation of Cingular and/or Fictitious Defendants 11-15 and said defendants were the premises owners and/or were charged with the duty to keep the premises reasonably safe.

24.     The Plaintiffs aver that said Defendants failed to exercise ordinary care to render and keep the premises in a reasonably safe condition and/or failed to give sufficient warning so that Mr. Cotton could have, with the exercise of ordinary care, avoided the danger.

25.     Said Defendants' failure to exercise ordinary care and/or failure to warn, was the actual, direct and proximate cause of Mr. Cotton's death.

WHEREFORE, the Plaintiffs demand judgment against the Defendants for wrongful death of Mr. Cotton, in an amount to be determined by the trier of fact.

## COUNT FOUR— OUTRAGEOUS CONDUCT
### AGAINST BOWE AND BETACOM

26.     Patricia Anne Cotton, individually, re-alleges the allegations of paragraph 1 through 25 and incorporates the same into this Count Four as if set in full herein.

27.     During the funeral proceedings for Mr. Cotton, Bowe, acting through a Betacom agent, engaged in conduct and directed language toward Patricia Anne Cotton that was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, so as to be regarded as atrocious and utterly intolerable in civilized society and such conduct either intentionally or recklessly caused Patricia Anne Cotton emotional distress, so severe that no reasonable person could be expected to endure it. Bowe was, at such time, acting within the line and scope of his employment with Betacom.

28.     Patricia Anne Cotton, as a proximate consequence of the acts of Bowe and Betacom was caused to suffer mental anguish and extreme emotional distress.

WHEREFORE, Patricia Anne Cotton demands judgment against Bowe and Betacom in the sum of Two Million Five Hundred Thousand Dollars in compensatory and punitive damages, and costs.

Bill Thomson (THO006)
Attorneys for the Plaintiffs

Of Counsel:
Thomason, Maples & Allsup, LLC
1710 2nd Ave. North
Bessemer, Al 35020

James A. Shands
205 20th Street North
Suite 500
Birmingham, Al 35203

Charles P. Gaines
L. Shaw Gaines
Gaines, Gaines & Rasco, PC
P. O. Box 275
Talladega, AL 35161

PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY

Attorney for the Plaintiffs

NOTE TO COURT CLERK:

Betacom Incorporated has not designated a registered agent in the State of
Alabama. Please Serve this Defendant by certified mail as follows:

Betacom Incorporated
P. O. Box 16280
Tampa Bay, FL 34687

Cingular Wireless, LLC has designated CSC Lawyers Incorporating SRV,
Inc. as its registered agent. Please serve this Defendant as follows:

Cingular Wireless LLC
% CSC Lawyers Incorporating SRV, Inc.
105 S. Perry Street
Montgomery, AL 30342

Please serve the individually named Defendant by certified mail as follows:

Mr. Randall H. Bowe
1302 Belcher Drive
Tarpon Springs, FL 34689-2040

Case 1:06-cv-01486-KOB   Document 127-4   Filed 05/06/08   Page 18 of 48

Case 1:08-cv-00434-JEO   Document 9-3   Filed 04/23/2008   Page 1 of 7   FILED
2008 Apr-23 AM 09:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE CIRCUIT COURT FOR TALLADEGA COUNTY

JENNIFER MARIE COTTON, etc et al., )
                                    )
        Plaintiffs,                 )
                                    )    CIVIL ACTION NUMBER
vs.                                 )        CV-06-148
                                    )
BETACOM INCORPORATED, et al.,       )
                                    )
        Defendants.                 )
_____/

## FIRST AMENDED COMPLAINT

Jennifer Marie Cotton and Jessica Michelle Cotton, the minor dependent children of William Eugene Cotton, II (deceased) (hereinafter "Cotton"), bring this wrongful death action pursuant to Ala. Code (1975) § 25-5-11 and Alabama's Worker's Compensation Act by and through their mother and next friend Patricia Ann Cotton and, with their first amended complaint, and state as follows:

## Additional Parties

With this Amended Complaint, the Plaintiffs add the following as party defendants:

ALT, Inc.
WesTower Communications, Inc.
Crown Castle International Corp.
Josh Cook
Matt Deadman
Adam Waterman

Fictitious Defendants A-P, more particularly described below and whose true names and identities as are unknown other than stated at this time, but will be substituted by amendment when their names and identities as proper party defendants are ascertained.

1A.   Alt, Inc. (hereinafter "ALT") is a corporation organized under the laws of the State of Missouri and has its principal place of business in the State of Missouri.

2A.   WesTower Communications, Inc. (hereinafter "WesTower") is a corporation organized under the laws of the State of


EXHIBIT
B

Delaware and has its principal place of business in the State of Washington.

3A.     Crown Castle International Corp. (hereinafter "Crown Castle") is a corporation organized under the laws of the State of Delaware and has its principal place of business in the State of Texas.

4A.     Josh Cook (hereinafter "Cox") is an individual over the age of nineteen years and, upon information and belief, is a resident of the State of Missouri.

5A.     Matt Deadman (hereinafter "Deadman") is an individual over the age of nineteen years and, upon information and belief, is a resident of the State of Missouri.

6A.     Adam Waterman (hereinafter "Waterman") is an individual over the age of nineteen years and, upon information and belief, is a resident of the State of Missouri.

7A.     Fictitious Defendants A-E are those persons, corporations or other entities who, if not Cox, Deadman or Waterman were the employees or servants of ALT and/or WesTower and negligently and/or wantonly caused an antenna(s) to fall and strike Cotton on or about the 10th day of March 2006.

8A.     Fictitious Defendants F-K are those persons, corporations or other entities who, if not ALT and/or WesTower, were the employers or masters of Cox, Deadman, Waterman and/ Fictitious Defendants A-E and are vicariously liable for the negligence and/or wantonness of said defendants.

9A.     Fictitious Defendants L-P are those persons, corporations or other entities who, if not Cingular or Crown Castle or in addition to the same, are the owners or operators of the premises wherein Cotton was killed.

<u>Additional Allegations of Fact</u>

10A.     On or about March 10, 2006, William Eugene Cotton, II ("Cotton") was killed by an accident arising out of and in course of his employment with BETACOM, INC..

11A.     On said date, Cotton was working within a structure below a telecommunications tower in Talladega, Alabama and was killed shortly after exiting said structure.

2

The Following Counts are intended to replace and supersede counts Two, Three and Four as stated in the Original Complaint.

## COUNT TWO (A)
### WRONGFUL DEATH - -NEGLIGENCE/WANTONNESS

12A.    The Plaintiffs re-allege each and every material allegation of their complaints and incorporate the same into this Count Two(A) as if set out in full herein.

13A.    On or about March 10, 2006 the defendants Cox, Deadman, Waterman, ALT, WestTower and/or Fictitious Defendants were attempting to replace an antenna or antennas on a telecommunication tower in Talladega County.

14A.    Said Defendants knew that this activity posed a substantial risk of injury, including death, to individuals working below and therefore were under a duty to warn individuals such as Cotton who, as a result of said defendants activities, were under a substantial risk of injury and death.

15A.    Despite this knowledge, said defendants negligently and/or wantonly failed to warn such individuals, including Cotton, or their employers.

16A.    Further, said defendants were under a duty to exercise ordinary and reasonable care and said defendants negligently and/or wantonly breached this duty.

17A.    Said breaches were the direct, actual and proximate cause of Cotton's injuries and therefore his death.

18A.    Defendants ALT, WesTower and/or Fictitious Defendants F-K are vicariously liable for the negligence and/or wantonness of their employees, agents and/or servants including but not limited to Cox, Deadman, Waterman and/or Fictitious Defendants A-E.

WHEREFORE, the Plaintiffs claim damages against defendants Cox, Deadman, Waterman, ALT, WestTower and/or Fictitious Defendants for the wrongful death of William Eugene Cotton, II and demand judgment against the same in an amount to be determined by the jury.

3

COUNT THREE (A)
Wrongful Death - - Premises Liability

19A.    The Plaintiffs re-allege each and every material
allegation contained in their complaints and incorporate the
same into this Count Three (A) as if set out in full herein.

20A.    The Defendants Cingular, Crown Castle and/or
Fictitious Defendants G-K were the owners or occupiers of the
premises where Cotton was killed.

21A.    Cotton was an invitee of said owners and/or occupiers
and as such was on said premises at the express or implied
invitation of said defendants.

22A.    This invitation was for a purpose in which said
defendants had a beneficial interest.

23A.    Said defendants were under a legal duty to be
reasonably sure that they were not inviting Cotton into danger
and to exercise ordinary care to render and keep the premises in
reasonably safe condition.

24A.    Said defendants negligently and/or wantonly breached
said duties.

25A.    As an actually, direct, natural, and proximate
consequence of said breach Cotton was physically injured and
thereby caused to die.

WHEREFORE, the Plaintiffs claim damages against Cingular, Crown
Castle and/or Fictitious Defendants G-K for the wrongful death
of William Eugene Cotton, II and demand judgment against the
same in an amount to be determined by the jury.

COUNT FOUR (A)
WRONGFUL DEATH - - RES ISPA LOQUITOR

26A.    The Plaintiffs re-allege each and every material
allegation contained in their complaints and incorporate the
same into this Count Four (A) as if set out in full herein.

27A.    The Defendants Cox, Deadman, Waterman, ALT, WestTower
or Fictitious Defendants had full management and control of the
antenna(s) which struck Cotton causing him injury and death.

4

28A.   The circumstances of this accident are such that according to common knowledge and the experience of mankind the incident would not have happened if those having the control of the management had not been negligent.

29A.   The accident was the actual, proximate and direct cause of Cotton's injuries and death.

Wherefore the Plaintiffs, pursuant to the doctrine of Res Ipsa Loquitor, claim damages against defendants Cox, Deadman, Waterman, ALT, WestTower and/or Fictitious Defendants for the wrongful death of William Eugene Cotton, II and demand judgment against the same in an amount to be determined by the jury.

Respectfully Submitted,

Bill Thomason (Tho006)
Clay Thomason (Tho185)
Jack R. Jacobs (Jac033)
Attorneys for Plaintiffs

Of Counsel:
Thomason, Maples & Allsup, LLC
Post Office Box 627
Bessemer, AL 35021
205-428-0702
fax 428-7890
billthomason@stslaw.net
claythomason@stslaw.net
jackjacobs@stslaw.net

James A. Shands
205 20th Street North
Suite 500
Birmingham, AL 35203

Charlie Gaines
Gaines, Gaines & Rasco
Post Office Box 275
Talladega, AL 35161

5

NOTE TO COURT CLERK:

Please serve the defendants by certified mail as follows:

ALT, Inc.
1150 East Harris Street
Grain Valley, MO 64029

WesTower Communications, Inc.
c/o The Corporation Company
2000 Interstate Park drive
STE 204
Montgomery, AL 36109

Crown Castle International Corp.
510 Bering Drive
STE 500
Houston, TX 36109

Josh Cook
c/o ALT, Inc
1150 East Harris Street
Grain Valley, MO 64029

Matt Deadman
c/o ALT, Inc
1150 East Harris Street
Grain Valley, MO 64029

Adam Waterman
c/o ALT, Inc
1150 East Harris Street
Grain Valley, MO 64029

7

<u>Certificate of Service</u>

I certify that I have served a copy of the foregoing on all counsel of record by placing a copy of the same in the United States Mail, first class postage prepaid and properly addressed as follows:

Patrick R. Norris
McDaniel, Baines & Norris, PC
Two Metroplex Drive
Suite 504
Birmingham, AL 35209-6812

Thomas S. Thornton
Carr Allison
100 Vestavia Parkway
Birmingham, AL 35216

Done this the _____ day of June 2006.

_____
Of Counsel

<u>Jury Demand</u>

THE PLAINTIFFS RENEW THEIR DEMAND FOR A TRIAL BY STRUCK JURY.

_____
Of Counsel

6

FILED
2008 APR 23 AM 09:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

JENNIFER MARIE COTTON, et al.,   ]
   ]
   Plaintiffs,   ]
   ]
v.   ]   CV-06-BE-1486-E
   ]
BETACOM INCORPORATED, et al.,,   ]
   ]
   Defendants.   ]
   ]

**ORDER**

This case is before the court on "Plaintiffs' Response to Defendants Beta-Com and

Randall Bowe's Motion for Summary Judgment or alternatively Motion to Dismiss Outrageous

Conduct Claims" (doc. 28). The court GRANTS this motion and DISMISSES with prejudice

Defendants Beta-Com, Incorporated and Randall H. Bowe. The court deems MOOT Defendants

Beta-Com Incorporated and Randal Bowe's "Motion for Summary Judgment" (doc. 25). The

case will proceed as to all remaining parties.

DONE and ORDERED this 5th day of December 2006.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE



EXHIBIT
C

FILED
2008 May-06 AM 09:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| PATRICIA ANNE COTTON,<br>etc., et al.,<br><br>      Plaintiffs,<br><br>v.<br><br>BETA-COM, INC., etc., et al.,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)   CASE NO.:CV-06-BE-1486-E<br>)<br>)<br>)<br>) |

## ORDER

This case is before the court on two motions to dismiss filed by the Plaintiffs

(Doc. 44 and 46). The court hereby GRANTS these motions. Defendants Crown

Castle International Corp., Adam Waterman, Matt Deadmon, and Josh Cook are

hereby DISMISSED without prejudice.

DONE and ORDERED this 15th day of May, 2007.


KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE


-1-



EXHIBIT
D

FILED
2008 Apr-23 AM 09:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

JENNIFER MARIE COTTON,                    )
as dependent minor child of William       )
Eugene Cotton II, who sues by and         )
through her mother and next friend        )
Patricia Ann Cotton, et al.,              )
                                          )
        Plaintiffs,                       )
                                          )        CV-06-BE-1486-E
v.                                        )
                                          )
BETACOM, INCORPORATED, et al.,            )
                                          )
        Defendants.                       )

### SCHEDULING ORDER

The court has before it the **September 22, 2006**, report of the parties' planning meeting

under Rule 26(f).

**I.      Pretrial Deadlines**

    **A. Discovery Deadlines**

All discovery must be commenced in time to be completed by **April 30, 2007**. The court

has revised the prior standard time for discovery to allow an additional thirty days. However, no

extension of the discovery deadline will be granted <u>unless</u> the party requesting the extension

affirmatively shows actual efforts taken to obtain all needed discovery within the allocated time

frame. (i.e., no extensions will be granted when counsel has not taken full advantage of the

allocated discovery time.)

Disclosure of expert witnesses – including a complete report under Rule 26(a)(2)(B) from

any specially retained or employed expert – is due from plaintiff(s) by **January 8, 2007**, and

1


EXHIBIT
**E**

from defendant(s) by March 8, 2007. Disclosure of the final lists of trial witnesses and exhibits under Rule 26(a)(3) must be filed and served by the plaintiff(s) thirty days prior to trial and by the defendant(s) thirty days prior to trial. The 14-day period for objections set forth in Rule 26(a)(3) shall apply, except the list of objections should be served but not filed. The parties must meet and confer in an effort to resolve the objections before filing any objections to the evidence. (See Section IV).

Any requests for extension of any deadlines must be filed at least five days prior to that deadline to be considered. Good cause must be shown for the extension of any deadline. Good cause includes a showing of what discovery, etc., has already been completed and precisely why the deadlines cannot be meet.

B. Deadlines to Amend Pleadings

Plaintiff may amend pleadings and/or join additional parties, in accordance with Fed. R. Civ. P. 15, until December 1, 2006. Defendant may amend pleadings and/or join additional parties, in accordance with Fed. R. Civ. P. 15, until December 15, 2006.

C. Pretrial

This case is set for pretrial on August 24, 2007 in fifth floor chambers of the undersigned in the Hugo L. Black U.S. Courthouse in Birmingham, Alabama. Parties will receive a pretrial docket approximately a month prior to the pretrial date indicating the time at which they are to report for the pretrial conference. Pretrial order instructions are available on the court's website at www.alnd.uscourts.gov under the court information for Judge Bowdre. The case should be ready for trial by October 2007. A trial date will be set at the pretrial conference.

2

Note: Cases in which no dispositive motion is filed by the deadline may be set for an earlier pretrial conference.

D. Other Settings

Counsel shall file with the court a <u>Joint</u> Status Report on March 19, 2007. The status report should include enough information to allow the court to understand the nature of the case, its current status, including any pending motions, and any current or anticipated problems in preparing the case for trial. Specifically, the court should be advised of the pertinent issues and the parties' positions as to those issues. In this joint status report, parties <u>may request</u> that the court schedule a status conference, if needed, by setting out the reasons. Alternatively, a status conference will be scheduled <u>if</u> the court deems one appropriate based on a review of the joint status report submitted in accordance with this order. The status report should not be used to argue the party's case, or to present all possible legal theories. Instead, the report should apprise the court of the case and current issues affecting trial preparation.

As part of the status report, parties should consider the prospects for settlement of this matter and shall report their efforts to do so. If any party is of the opinion that a court-conducted settlement conference would be helpful, that party may request by separate writing that the court conduct such a conference as a part of or separate from the scheduled status conference. Such party should be prepared to suggest a reasonable basis for consideration of settlement and should be prepared to make a reasonable offer or acceptance.

Also as part of the status report, parties shall notify the court whether they are agreeable to submitting this case to mediation conducted by a mediator from the panel of neutrals.

II.    Discovery Disputes

3

No motions concerning discovery matters should be filed until counsel have exhausted all efforts to resolve the dispute among themselves. Every discovery motion must affirmatively state all efforts to resolve the disputed matter; failure to attempt to resolve the dispute without court intervention or to affirmatively so state will result in the automatic denial of the motion.

Discovery disputes will <u>occasionally</u> be referred to a magistrate judge for handling. Because decisions concerning discovery rest largely within the discretion of the judge, objections to a magistrate's ruling on a discovery matter should rarely be made and will rarely be granted absent a clear showing that the decision was clearly erroneous or contrary to law. See 28 USC § 636.

III.   Submission of Motions

All potentially dispositive motions must be filed by May 15, 2007, and must comply with this court's requirements as stated in "Appendix II" available on the court's website at www.alnd.uscourts.gov under the court information for Judge Bowdre.   In its discretion, the court may enter a separate submission order.  Counsel <u>shall</u> refrain from filing any motion for summary judgment where a reasonable person would recognize that genuine issues of material fact exist.

All other pre-trial motions, including challenges to expert witnesses but not including other motions in limine, must be filed by the same date.

All other motions must be filed promptly after the movant becomes aware of facts indicating the need to file a motion. All briefs as well as pleadings should be filed with the Clerk of the court. No courtesy copies of <u>pleadings</u> will be accepted, but the court requires courtesy copies of <u>briefs</u> and <u>evidentiary submissions</u> to be delivered to the clerk's office (not to

4

chambers) marked as judge's courtesy copy.

The court shall promptly dispose of nondispositive motions. Without prior notice, it may summarily dispose of perfunctory and/or other motions where the facts and law appear to be clear. Therefore, when served with a motion, any party who wishes to oppose it should immediately telephone the court's chambers and so advise. Opposing briefs and documents shall follow within **three days** after the motion is filed if notice is first given to the court of an intent to file opposition.

If the court enters a briefing schedule, the court will generally decide such motions within thirty days of the submission date. The court encourages counsel to contact the judge's chambers to verify that a motion is scheduled for a determination if counsel has not received a decision on the motion within **forty-five days** of its submission date.

All motions, responses, briefs, and memoranda relating to any matter set for hearing before the court must be filed electronically **no later than 4:30 p.m., the day before the date of the hearing.** Papers filed after that time will not be considered at the hearing.

IV.    Trial Exhibits

Each party that anticipates offering as substantive evidence six exhibits or more shall premark such exhibits in advance of trial, using exhibit labels and exhibit lists available from the Clerk of Court. At least **thirty days prior to trial**, all counsel shall serve and file a copy of the exhibit list under Rule 26(a)(3), with the exhibits being made available for inspection by opposing counsel; the presentation of evidence at trial shall not ordinarily be interrupted for opposing counsel to examine a document that has been so identified and made available for inspection. Exhibits not listed will not be admitted in the case-in-chief unless good cause is

5

shown. Within fourteen days of receipt of the exhibit list, counsel shall serve but not file a list of any objections to the exhibits, and shall meet and confer in an effort to resolve the objections. Any unresolved objections regarding the admissibility of any evidence should be submitted by motion in limine at least five business days prior to trial.

V.     Medical Information

Counsel for all parties are hereby granted the right to inspect and copy all hospital and medical reports relative to the medical care, treatment, diagnosis, condition, and history of Patricia Ann Cotton, together with the right to interview (in person or otherwise) all physicians, administrators and other personnel in connection therewith. A copy of this order shall constitute sufficient authority for such inspection, copying, or interview.

Except as expressly modified by the above, the stipulations, limitations, deadlines and other agreements set forth in the report of the parties shall apply in this case.

DONE and ORDERED this 25th day of September 2006.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE

6

2008 April 09:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA,
## EASTERN DIVISION

PATRICIA ANNE COTTON, etc., et al., )
                                    )
              Plaintiffs,           )
                                    )
vs.                                 )   CIVIL ACTION NUMBER
                                    )
ALT, INC., et al.,                  )   CV-06-BE-1486-E
                                    )
              Defendants.           )

## PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT

COME NOW, Plaintiffs and pursuant to Fed.R.Civ.P. 15(a) and 16(b) respectfully request this Court to grant Plaintiffs leave to amend their Complaint in this case and allow as pleaded, Plaintiffs' Second Amended and Restated Complaint, which is attached hereto as Exhibit A. As grounds for this motion, Plaintiffs state as follows:

1.    Under the general interpretation of Fed.R.Cir.P. 15(a), "leave [to amend] shall be freely given when justice so requires." See Smith v. School Bd of Orange Co., 487 F. 3d 1361 (11th Cir. 2007)

2.    However, where a party's motion to amend s filed beyond the deadline for such motions – in this case amendment of pleadings – as set forth in the Court's Scheduling Order, the moving party must demonstrate good cause why leave should be granted. Id. at 1366 citing Fed.R.Civ.P.


EXHIBIT
F

16(b) and Sosa v. Airport Systems, Inc., 133 F. 3d 1417, 1419 (11th cir. 1998).

3.     On September 25, this court entered its Scheduling Order pursuant to Rule 16(b), setting December 1, 2006 as the deadline for amendment to the pleadings.  (Doc. 12). [1]

4.     Accordingly, Plaintiffs set forth the following as evidence of "good cause" for allowing this proposed amendment to the Complaint.

5.     First, Plaintiffs seek to amend their complaint for the purpose of more specifically stating their claims of negligence and wantonness against the Defendants sued herein.

6.     For example, Plaintiffs seek to more clearly state claims against Defendant WesTower, for its own negligent and/or wanton failure to properly inspect, supervise and/or monitor the jobsite, and particular, its sub-contracted company ALT, its employees and the equipment used by that Defendant.

7.     Similarly, Plaintiffs seek to more clearly state their claims for negligence and/or wantonness as to Defendant Cingular for its failure to properly monitor and coordinate the work being performed at the subject jobsite.

---

[1] This Court's subsequent Scheduling Orders appear to have done nothing to extend this deadline. See Doc. 25, 38 and 62

8.     No new claims are being made against any of the Defendants. To the contrary, Plaintiffs are attempting to make their allegations more specific as evidence has been and continues to be uncovered through the discovery process and the contours of each Defendants' individual liability becomes more clear.

9.     As this Court is aware, Plaintiffs have and continue to work with great diligence to develop evidence which would tend to support the already stated claims in this case. Moreover, as this court is also aware, Plaintiffs' efforts have often been threatened by scheduling conflicts with various defense counsel, witnesses failing to show up for depositions, certain defendants' refusal to respond to discovery, and the need for motions to obtain such discovery.

10.     To the extent the proposed Amended and Restated Complaint is untimely or unreasonably delayed, this has not been the result of any bad faith or dilatory conduct on Plaintiffs' part.

11.     Accordingly, Defendants will not be prejudiced by this amendment as it more clearly defines their alleged wrongful conduct, and thus will provide them with a more adequate basis upon which to defend the claims against them.

WHEREFORE, Premises Considered, Plaintiffs respectfully request

this Court to enter an Order **GRANTING LEAVE** for Plantiffs to Amend

their Complaint as set forth.

Respectfully Submitted,

/s/ Edward McF. Johnson
Dennis G. Pantazis
Edward McF. Johnson
Attorneys for the *Cotton* Plaintiffs

Of Counsel:
WIGGINS, CHILDS, QUINN AND PANTAZIS, LLC
The Kress Building
301 19th Street North
Birmingham, AL 35203
(205)254-1500

/s/ Clay J. Thomason
Bill Thomason ASB-7576-s79j
Clay J. Thomason ASB-1418-a63t
Attorneys for the *Cotton* Plaintiffs

Of Counsel:
THOMASON-MAPLES, LLC
Post Office Box 627
Bessemer, AL 35021
(205) 428-0702
fax   428-7890
billthomason@t-mlaw.net
claythomason@t-mlaw.net

Additional Counsel for *Cotton* Plaintiffs:

James A. Shands
205 20th Street North
Suite 500
Birmingham, AL 35203

Charles P. Gaines
Lucius S. Gaines
GAINES, GAINES, & RASCO
Post Office Box 275
Talladega, AL 35160

## CERTIFICATE OF SERVICE

I hereby certify that I have, on this the 4th day of October, 2007 served a copy of the foregoing on all counsel electronically via the CM/ECF system.

Patrick Norris
McDaniel, Bains & Norris, PC
Two Metroplex Drive, Suite 504
Birmingham, AL 35209

J. Mitchell Frost
Patrick Montgomery
Ferguson, Frost & Dodson, LLP
Post Office Box 430189
Birmingham, AL 35243-0189

M. Keith Gann
Huie, Fernabucq & Stewart, LLP
Three Protective Center
2801 Highway 280 South, Suite 200
Birmingham, AL 35223

Joe Dean
Dean & Barrett
Post Office Box 231
Opelika, AL 36803-0231

Roderick K. Nelson
Leslie M. Hand
Spain & Gillon, LLC
The Zinszer Building
2117 Second Avenue North
Birmingham, AL 35203

/s/ Edward McF. Johnson
OF COUNSEL

Case 1:06-cv-01486-KOB   Document 127-4   Filed 05/06/08   Page 39 of 48

Case 1:08-cv-00434-JEO   Document 9-7   Filed 04/23/2008   Page 7 of 49   FILED
2007 Oct-04 PM 05:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA,
EASTERN DIVISION

PATRICIA ANNE COTTON, etc., et al.,  )
                               )
         Plaintiffs,        )
                               )
vs.                              )  CIVIL ACTION NUMBER
                               )
ALT, INC., et al.,            )    CV-06-BE-1486-E
                               )
         Defendants.     )

## PLAINTIFFS' SECOND AMENDED AND RESTATED COMPLAINT

### I.    INTRODUCTION

1.    Plaintiffs Jennifer Marie Cotton and Jessica Michelle Cotton bring this action against the Defendants for the wrongful death of their father William Eugene Cotton. This action is brought by Plaintiffs, by and through their mother and next friend Patricia Anne Cotton, pursuant Ala. Code (1975) §25-5-11 and under §6-5-410 against the defendants ALT, Inc., WesTower Communications, Inc., and Cingular Wireless, LLC for the death of William Eugene Cotton, II.

2.    On or about March 10, 2006, William Eugene Cotton, II was killed in the line and scope of his employment with Betacom, Inc., a non-party, when an eight foot, forty to sixty pound directional antenna fell from approximately two hundred and sixty (260) feet and struck him upon his

head, neck and shoulders. Cotton's death was the actual, direct and proximate consequence of the wrongful acts and omissions of the Defendants ALT, Inc., WesTower Communications, Inc. and Cingular Wireless, LLC. The Plaintiffs file this amended and restated complaint for the purpose of more particularly setting forth the basis for the claims for relief set out in the Original Complaint, and as these more particularly pleaded averments conform to the evidence adduced through discovery to this point, as discovery is ongoing.

3.    Plaintiffs bring claims against the defendants based on the negligence and wantonness of ALT, Inc., WesTower Communications, Inc., and Cingular Wireless, LLC including:  COUNT ONE, Negligence and Wantonness against ALT, Inc.; COUNT TWO, Negligent and Wanton Failure to Provide a Safe Workplace against ALT, Inc.; COUNT THREE, Res Ipsa Loquitor against ALT, Inc.; COUNT FOUR, Negligence and Wantonness against WesTower Communications, Inc.; COUNT FIVE, Failure to Provide a Safe Workplace against WesTower Communications, Inc.; COUNT SIX, Negligence and Wantonness against Cingular Wireless, LLC and COUNT SEVEN, Negligent and Wanton Failure to Provide a Safe Workplace against Cingular Wireless, LLC.

2

## II.  PARTIES

4.    Plaintiffs adopt and re-allege the previous paragraphs as if fully
stated herein.

5.    Plaintiffs Jessica Michelle Cotton and Jennifer Marie Cotton
are the minor dependant children of the deceased, William Eugene Cotton, II
(hereinafter "Cotton").  They bring this action by and through their mother
and next friend Patricia Ann Cotton.

6.    Defendant ALT, Inc. (hereinafter "ALT") is a corporation
organized under the laws of the State of Missouri and has its principal place
of business in Grain Valley, Missouri.  ALT was at the time of Cotton's
death and continues to be engaged in the business of installation,
modification, construction and testing of telecommunication towers,
antennas, and their component parts.  At the time of Cotton's death, ALT
was engaged by the defendants WesTower Communications Inc. and
Cingular Wireless, LLC to replace antennas upon a four hundred and twenty
foot "guyed" cellular tower in Talladega, Alabama, (hereinafter "tower" or
"the tower site").

7.    Defendant WesTower Communications, Inc. (hereinafter
"WesTower") is a corporation organized under the laws of the State of
Delaware and has its principal place of business in a State other than

3

Alabama. At the time of Cotton's death, the defendant WesTower was
engaged by the Defendant Cingular Wireless, LLC to perform work related
to an upgrade of the tower site, which included the removal and installation
of new Directional Cellular Antennas ("Antennas"), Tower Mounted
Amplifiers ("TMAs") and other equipment. At all times relevant to the acts
and omissions described herein, Defendant WesTower was the master and
employer of Defendant ALT.

    8.    Defendant Cingular Wireless, LLC ("Cingular") is a Limited
Liability Company organized under the laws of the State of Delaware and
has its principal place of business in the State of Georgia. Defendant
Cingular is a mobile phone and data service provider, which was the
operator of the tower site where Cotton was killed. Defendnat Cingular,
hired Defendants WesTower and ALT to perform tower antenna upgrades or
modifications at the tower site. At or near the same time, Defendant
Cingular also contracted with Cotton's employer Betacom, Inc., for Betacom
to perform work related to installation of cellular, radio and/or wireless
equipment inside and enclosed structure located at the foot of the subject
tower.

4

### III.   FACTS

9.    Plaintiffs adopt and re-allege the previous paragraphs as if fully stated herein.

10.    On or about the March 10, 2006, while working in the line and scope of his employment with Betacom, the decedent William Eugene Cotton, II ("Cotton") was killed when a eight foot antenna weighing between forty and sixty pounds fell from a height of more than two hundred and sixty (260) feet and struck him about his head, neck and shoulders.

11.    Prior to being struck and killed, Cotton had been working within the enclosed structure located at the foot of the subject tower.

12.    At the time of Cotton's death, Defendant ALT, by and through its employees, agents and servants Josh Cook, Adam Waterman and Matthew Deadmond, were in the process of simultaneously lowering, two (2) separate eight (8) foot Directional Antennas weighing between forty and sixty pounds, and at least one TMA, along with other equipment.

13.    The method and manner which Defendant ALT utilized to lower this material, including the actual antenna which ultimately struck and killed Cotton, was unreasonably dangerous in that it did not provide the ALT tower crew adequate or reasonable control over the movement of the Antennas, TMA or other materials being lowered from the tower at

considerable height.  Moreover, the method and manner which ALT utilized

in its selection, maintenance and control over the rigging system, ropes and

other devices used for lowering these objects was in itself unreasonably

dangerous in that their use created the foreseeable risk of failure of the

certain "short ropes" which were used to hoist and/or lower the Antennas

and/or TMAs or other equipment from the tower.

14.    Said method and manner of lowering Antennas, TMAs and

other equipment from such height created an unreasonable and avoidable

hazard for all individuals working at the Talladega tower site, and the

foreseeable risk that the "short ropes" being utilized by the ALT crew were

likely to fail.

15.    During the lowering of the subject antenna, the Defendant ALT

negligently and/or wantonly selected and utilized a "short-line" rope which

it created from either cutting into smaller lengths or using previously cut up

lengths of a 100 foot length of polypropylene "diamond braid" rope or cord

which it had previously purchased from a Lowe's home improvement store

in Mobile, Alabama.

16.    Defendant ALT's use of improper equipment and improper

methods was caused, in part, by ALT's failure to use ordinary and

reasonable care in the training and supervision of its agents, employees and

6

servants including ALT's failure to train and supervise tower crew members Josh Cook, Adam Waterman, Matt Deadmond and ALT's purchaser of said rope, Nathan Ross.

17.   At the time Defendant ALT purchased the subject polypropylene rope or cord, it was accompanied by a tag which contained the clearly-worded, readable warning that accordingly could be comprehended and heeded by ordinary persons exercising ordinary care, and which stated in pertinent part:

> WARNING ... DO NOT USE THIS PRODUCT FOR
> OVERHEAD LIFTING ... OR OTHER SITUATIONS
> WHERE PERSONAL SAFETY OR VALUABLE
> PROPERTY CAN BE ENDANGERED .... MISUSE CAN
> RESULT IN SERIOUS INJURY OR DEATH.

18.   Despite the clear meaning and admonition of the attached Warning label, ALT willfully and recklessly misused the rope or cord in a method and manner for which it was not intended by the manufacturer and simply chose to ignore the warning, thereby causing and allowing the subject rope to ultimately be used by the subject ALT crew members in a manner which in turn caused it to fail and which ultimately result in the death of Cotton.

19.   ALT's failure to use reasonable care and appropriate or approved methods in lowering and/or raising the Antennas, TMAs and other

7

material on the subject tower caused the subject and misused "short-line" to rub against the tower, objects located on or attached to the subject tower, or other ropes or items contained or utilized in the ALT crew's hoisting system. Further, the method and manner chosen by the ALT crew to lower the subject antennas, TMAs and other material further caused the braided outer jacket of the subject rope or cord to abrade in such a way that the braided outer jacket was caused to burn, scorch or melt, which in turn thereby exposed the unbraided and unwound interior materials to be even further subjected to and more susceptible to continued abrasion which in turn ultimately caused its failure and resulted in Cotton's death.

20.    Defendant ALT knew or should have known that its use of the subject "short-line" coupled with its hoisting/lowering methods were likely to cause materials such as the subject antenna to break lose, fall and thereby cause serious injury including death.

21.    Nevertheless, Defendant ALT negligently, wantonly and willfully failed to provide its employees with the methods and manner of hoisting/lowering equipment from towers such as the Talladega site, and further negligently, wantonly and willfully failed to provide its employees with the appropriate equipment, including, but not limited to the proper type

8

of "short ropes" necessary to protect the life, health and safety of others including Cotton.

22.  At all times prior to Defendant ALT's work to hoist/lower equipment from the subject tower, Defendant ALT was aware and even possessed the proper equipment including nylon rope slings _and_ ropes manufactured and intended for use in overhead lifting. In fact, these very items were readily available to the subject ALT crew and were a feasible alternative to the polypropylene rope or cord used to fashion the "short lines", whose inevitable failure caused Cotton's death.

23.  Prior to and up to the time of Cotton's death, ALT had been employed by Defendants WesTower and Cingular to perform the task of removing and upgrading the Antennas, TMAs and other equipment on the subject cell tower.

24.  The process of removal and installation of Antennas, TMAs and other equipment  to and from the height of their location on the subject tower created or substantial risk of serious injury and death. These risks and dangers created were both inherent and intrinsic to the type of work ALT ultimately performed on the subject tower, and for which Defendants WesTower and ALT were ultimately employed by Defendant Cingular,