FILED

2008 May-06 PM 06:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

particularly as it related to the removal of, lowering of or raising of objects

such as Antennas, TMAs or other items overhead and at such height.

25.    At the time of Cotton's death, and throughout the planning for

and performance of the upgrades to the tower site, Defendants ALT,

WesTower and Cingular were "employers" within the meaning of Ala. Code

(1975) § 25-1-1 in that they, separately and in concert with one another,

exercised control and maintained the right of control or custody over the

subject tower site and/or over all employees performing work therein.

26.    In fact, throughout the planning and performance of the upgrade

to the subject cell tower, Defendants Cingular, WesTower and ALT were

"employers" not just to Cotton and his co-workers with BetaCom, but were

employers of all crane workers, fence contractors, building contractors,

electrical contractors, heating and cooling contractors, telephone contractors,

and all of their employees as defined by statute.

27.    All of these employees remained under the control and/or were

subject to the retention of the right of control exercised by Defendants

Cingular, WesTower and/or ALT.

28.    Throughout the time period of planning and performing the

upgrade to the subject cell tower, Defendant Cingular and WesTower

regularly visited the subject tower site, exercised control over, and retained

10

the right of control over the actions of Defendant ALT, and its employees, as well as all other sub-contractors and their employees.

29.     In fact, throughout this same time period, Defendant Cingular, by and through its representatives and agents, repeatedly exerted pressure on Defendants WesTower and ALT, and their respective employees, as well as other sub-contractors and their employees, to perform their respective duties at a hurried and unreasonably dangerous pace.

30.     As a direct and proximate result of the pressure placed upon Defendants WesTower and ALT, and their employees, along with other contractors and their employees, Defendant Cingular's hurried and unreasonably dangerous work pace created an unreasonably dangerous hazard to Cotton and to other workers present at the subject tower site.

31.     Specifically, Defendant Cingular insisted that Defendants WesTower and/or ALT perform the overhead detachment, removal and replacement of Antennas, TMAs and other items at extreme heights at the same time that it knew or should have known that work at the base of the tower was to be performed by Betacom, its employees, and other subcontractors and their employees. Defendant Cingular's insistence upon its unreasonably dangerous schedule or pace for completion, further constituted reckless, willful and conscious disregard for maintaining a safe

11

workplace as required of employers under Ala. Code §25-1-1, and placed both Cotton and other workers in substantial danger of serious injury or death.

32.   Furthermore, as the owner and/or operator of the subject tower site, Defendant Cingular owed both a legal and contractual duty to exercise reasonable care in its management and control of the tower site project.

33.   Nevertheless, and through its own reckless insistence on an unreasonably dangerous pace of the upgrade to be performed on the subject cell tower, Defendant Cingular's acts and omissions constituted a willful disregard for the risk created by its unreasonable demands on the subcontracted companies' performance of their duties, and as a proximate result thereof, created an unreasonably dangerous overhead hazard that ultimately resulted in Cotton's death.

34.   Defendant Cingular was under a further legal and contractual duty whereby it was charged with the supervision of all work performed by Defendants ALT and WesTower, and their employees, as well as all other subcontracted entities and their employees, to ensure that the upgrades being performed on the subject cell tower were conducted in a reasonably safe manner.

12

35.    Defendant Cingular knew or at the very least should have known that Defendants ALT and WesTower were in fact not performing their work in a reasonably safe manner and that the nature of their work and the manner in which they were performing their work necessarily created unreasonably dangerous and unnecessary hazards to employees of other contractors and companies working on the tower site.

36.    In addition to Defendant Cingular's visits to the subject work site, Defendant WesTower voluntarily undertook the duty to inspect the equipment and methods utilized by Defendant ALT in the raising and lowering of Antennas, TMAs and other equipment from the subject tower. Defendant WesTower was under both a legal and a separately defined contractual duty to supervise the actions of Defendant ALT and its crew members, and to regularly inspect the tower site, including the equipment and methods used by ALT and its crew members, in their work to detach, raise and lower Antennas, TMAs and other material to and from the subject cell tower.

37.    Defendant WesTower negligently and wantonly failed to exercise reasonable care in the performance of either its legal or contractual duties to manage and inspect the work of Defendant ALT at the subject tower site, including its maintenance of equipment and the methods

13

employed by Defendant ALT in its work to detach, raise and/or lower Antennas, TMAs or other material from the subject cell tower.

38.   Defendant WesTower knew or should have known that Defendant ALT was utilizing equipment, including the subject polypropylene rope or cord as a form of "short-line," which it knew or should have known was not reasonably safe for the particular use in the raising and lowering of these items to or from the subject tower. Defendant WesTower also knew or should have known that the methods employed by Defendant ALT violated the specific terms and conditions of its own contract with Defendant ALT regulating safe work practices, including, but not limited to the requirement that all loads being raised or lowered to or from the tower site be properly "tagged", which in this particular instance it was not.

39.   In fact, in the days leading up to the incident resulting in Cotton's death, Defendant WesTower voluntarily and/or pursuant to the terms of its contract with Defendant ALT, undertook to inspect the equipment contained in the ALT crew's vehicle which included the bin(s) which contained the subject polypropylene rope or cord which was being used as "short-line."

14

40.   In the performance of said inspection(s), WesTower knew or, in the exercise of reasonable care, should have known, that ALT was using and intended to use the subject polypropylene rope or cord as "short-line" for the specific purpose of hoisting and/or lowering material on the tower, and that ALT's use of the subject "short-line" in this manner was unsafe, unreasonably dangerous, and likely to cause serious injury or death to persons working near the tower site.

41.   Moreover, in the performance of Defendant WesTower's inspection(s), WesTower knew or should have known that the hoisting method employed by ALT violated the terms of ALT's contract with WesTower with respect to the requirements for safe hoisting methods, in particular that loads being hoisted or lowered to the subject tower be "tagged".

42.   Defendants ALT, WesTower and Cingular, individually and in concert, failed to comply with their own safety standards and with other recognized standards for the operation, use, construction and retrofitting of telecommunications towers.

43.   Defendants ALT, WesTower and Cingular, individually and in concert, failed to comply with applicable Federal regulations and standards

15

including regulations and guidelines promulgated by the United States Occupational Health and Safety Administration.

## IV.   CAUSES OF ACTION

### COUNT ONE
### DEFENDANT ALT, INC.

### NEGLIGENCE AND WANTONNESS

44.   Plaintiffs adopt and re-allege the previous paragraphs as if fully stated herein.

45.   Defendant ALT was under a legal and contractual duty to exercise reasonable and ordinary care in the method and manner in which it performed work at the Talladega tower site where Cotton was killed, in particular, the manner and method in which it raised and/or lowered Antennas, TMAs and other materials to or from the subject tower.

46.   Defendant ALT also had an affirmative duty to warn Cotton and others that it intended to lower Antennas, TMAs or other equipment from the subject tower and to warn Cotton and others of the dangers created by ALT's method and manner of its performance of the work at the tower site.

47.   Defendant ALT breached its duties of reasonable and ordinary care along with its affirmative duty to warn in that it:

16

a. Utilized improper and unreasonably dangerous methods to raise and lower Antennas, TMAs and other equipment to and from the subject tower;

b. Utilized improper equipment, including the subject polypropylene rope or cord in the form of "short-lines," for the purpose of hoisting or lowering Antennas, TMAs or other equipment at the tower;

c. Failed to use safe and reasonable practices to control loads being removed from the tower, including the Antenna which fell, struck and killed Cotton, such that the load and or the ropes and/or "short-line(s)", used for this purpose were caused to come in contact with the tower, other ropes, and/or the lowered equipment or other equipment or material attached to the tower;

d. Failed to use safe and reasonable practices to safely remove or appropriately alter the direction of the load or any component part of same, such that the load or any of its components, would further avoid contact with the subject tower, contact with the load's various other ropes,

17

equipment, cords and/or "short-line(s)" or with any other item(s);

e. Failed to use reasonable care in the purchase, storage and discarding of equipment, such that improper equipment, including the subject "short-line", was caused or allowed to be used in the first place;

f. Failed to warn Cotton and others that it was performing overhead work, specifically that it would be lowering and/or raising Antennas, TMAs or other material, on the date of Cotton's death and/or just prior to the commencement of its lowering of such materials, or otherwise failing take reasonable precautions to ensure that Cotton and others were not invited into danger;

g. Failed to exercise reasonable caution in its observance of the load(s), including the subject antenna, as it was being lowered from the tower;

h. Failed to use reasonable care in the training, supervision and control of its employees;

i. Failed to utilize material and equipment that met or exceeded accepted industry standards; and,

18

          j.   Failed to abate the hazards created by its tower crew

             work on the subject tower.

    48.   In addition to Defendant ALT's failure to use ordinary care as described above, Defendant ALT's action and/or omissions were further done with both willful and conscious disregard for the safety of others, in particular persons working at or near the base of the subject tower, including Cotton.

    49.   Defendant ALT's failure to use ordinary and reasonable care, and/or its willful and conscious disregard for the safety of others was the actual, proximate and direct cause of Cotton's death.

    50.   Defendant ALT's wrongful acts and omissions concurred, combined and coalesced with the wrongful acts and omissions of Defendants WesTower, Cingular and others, such that Defendant ALT's acts and/or omissions, whether the product of negligence or wantonness, caused or contributed to the cause Cotton's death.

    51.   Along with WesTower and Cingular, the Defendant ALT is jointly and severally liable for the death of Cotton.

    52.   With regard to its liability for its negligent and/or wanton acts or omissions, ALT is liable for the tortious acts and omissions of its employees, agents and servants under the doctrine of respondeat superior

19

including, but not limited to, the negligent and wanton acts or omissions of its servants Josh Cook, Adam Waterman, Matt Deadmond, Jeff Silva, Nathan Ross, and Robert Camp.

WHEREFORE, Plaintiffs demand judgment against Defendant ALT for its negligent and/or wanton acts/omissions for the wrongful death of William Eugene Cotton, II and seek damages from Defendant ALT pursuant to Ala. Code (1975) §§ 6-5-410 & 25-5-11 in an amount to be determined by a jury.

## COUNT TWO:
## DEFENDANT ALT, INC.

### NEGLIGENT AND WANTON
### FAILURE TO PROVIDE A SAFE WORKPLACE

53.   Plaintiffs adopt and re-allege the previous paragraphs as if fully stated herein.

54.   At all times pertinent to this suit, Defendant ALT possessed control and/or custody over the Talladega tower site where Cotton was killed.

55.   Pursuant to Ala. Code (1975) §25-1-1, et seq., Defendant ALT was under a legal duty to ensure the Talladega tower site where Cotton was killed was reasonably safe for others.

20

56.    Furthermore, pursuant to its contractual obligations set forth in its agreement with Defendant WesTower, Defendant ALT was contractually obligated to ensure the Talladega tower site where Cotton was killed was reasonably safe for others.

57.    Pursuant to both its legal and contractual duty(ies), Defendant ALT was obligated to do everything reasonably necessary to protect the life, health and safety of Cotton and others.

58.    Nevertheless, Defendant ALT negligently and/or wantonly breached said legal and contractual duties.

59.    Defendant ALT's negligent and/or wanton breach of these legal and/or contractual duties include the following:

      a.    ALT failed to exercise reasonable care in the control of the job site so that others, including Cotton, were caused or allowed to be present when material was hoisted and lowed on the tower;

      b.    ALT failed to exercise reasonable care in the selection and use of equipment used to hoist and lower material on the tower;

c.    ALT failed to exercise reasonable care in the selection and use of methods to hoist and lower material on the tower;

d.    ALT failed to exercise reasonable care in the placement of barricades, signs and other warnings designed to protect against others, including Cotton, from unknowingly walking into a hazardous situation; and,

e.    ALT failed to exercise reasonable care in that it failed to supply its employees with two-way radios or any other reasonable forms of communication devise that could have alerted Cotton and others of the hazards ALT created;

f.    ALT failed to provide a reasonably safe method for ingress and egress to and from the tower site and/or structure.

60.    Said negligence and wantonness by Defendant ALT was the actual, proximate and direct cause of Cotton's death.

61.    Said wrongful acts and omission were done with a reckless or conscious disregard for the safety of others including Cotton.

22

62.    ALT's wrongful acts and omissions concurred, combined and coalesced with the wrongful acts and/or omissions of Defendants WesTower, Cingular and others, to cause or to contribute to cause Cotton's death.

63.    Together with Defendants WesTower and Cingular, Defendant ALT is jointly and severally liable for the death of Cotton.

64.    Defendant ALT is liable for the tortious acts and omissions of its employees, agents and servants under the doctrine of respondeat superior including, but not limited to, the negligent and wanton conduct of its servants Josh Cook, Adam Waterman, Matt Deadmond, Jeff Silva, Nathan Ross, and Robert Camp.

WHEREFORE, Plaintiffs demand judgment against Defendant ALT for its negligent and/or wanton acts/omissions for the wrongful death of William Eugene Cotton, II and seek damages from Defendant ALT pursuant to Ala. Code (1975) §§ 6-5-410 & 25-5-11 in an amount to be determined by a jury.

23

## COUNT THREE:
## DEFENDANT ALT, INC.

### RES IPSA LOQUITOR

64.   Plaintiffs adopt and re-allege the previous paragraphs as if fully stated herein.

65.   Defendant ALT had full management and control of the six foot, forty to sixty pound antenna, which fell, struck and killed Cotton.

66.   The circumstances of the incident, which killed Cotton are such that according to common knowledge and the experience of mankind, the accident would not have happened if those having control and management of the antenna had not been negligent.

67.   The subject incident was the actual, proximate and direct cause of Cotton's injuries and death.

WHEREFORE, Plaintiffs demand judgment against Defendant ALT for its negligent and/or wanton acts/omissions for the wrongful death of William Eugene Cotton, II and seek damages from Defendant ALT pursuant to Ala. Code (1975) §§ 6-5-410 & 25-5-11 in an amount to be determined by a jury.

24

## COUNT FOUR:
## DEFENDANT WESTOWER, INC.

## NEGLIGENCE AND WANTONNESS

68.    Plaintiffs adopt and re-allege the previous paragraphs as if fully stated herein.

69.    Defendant WesTower was under a legal duty to exercise reasonable and ordinary care in its exercise of control and supervision and/or its maintenance of its right of control and supervision over the work performed at the Talladega tower site, including the control and supervision of its agent and servant, Defendant ALT, Inc. and its tower crew.

70.    Defendant WesTower was also under a contractual duty whereby it undertook to exercise control and supervision and/or maintain the right of control and supervision over the work performed at the Talladega tower site, including the control and supervision of its agent and servant, Defendant ALT, Inc. and its tower crew.

71.    Specifically, Defendant WesTower voluntarily undertook and was contractually obligated to conduct routine safety inspections of the Talladega tower site, including inspection of the equipment and methods utilized by Defendant ALT to raise and lower Antennas, TMAs and other equipment on the subject cell tower.

25

72.   Defendant WesTower was therefore under both the legal and contractual duty to exercise reasonable care and skill in the manner in which it inspected said tower site, including specifically the equipment and hoisting and lowering methods being employed by Defendant ALT.

73.   Defendant WesTower was further under a legal and contractual duty to adequately and appropriately warn others, including Cotton, when work was to be performed overhead, specifically as it was being performed on March 10, 2006, and to protect persons such as Cotton and others from walking into danger.

74.   Defendant WesTower's contractual and legal duties were for the express or implied benefit of Cotton and others similarly situated.

75.   Nevertheless, Defendant WesTower negligently and wantonly breached its legal and contractual duties as follows:

        a.   WesTower negligently and wantonly supervised the actions of ALT including the actions of Josh Cook, Adam Waterman and Matt Deadmond;

        b.   WesTower negligently and wantonly inspected and/or negligently and wantonly failed to inspect the equipment and methods used to raise and lower material from the subject tower;

26

    c.    WesTower negligently and wantonly failed to warn Cotton of dangers known to WesTower and hidden from Cotton; and,

    d.    WesTower negligently and wantonly exercised control and/or negligently and wantonly retained the right of control the job site so that others, including Cotton, were caused or allowed to be present when material was hoisted and lowed on the subject tower.

76.    Said negligent and wanton acts and omissions were the actual, proximate and direct cause of Cotton's death.

77.    Said wrongful acts and omissions were done with a willful, reckless and conscious disregard for the safety of others including Cotton.

78.    WesTower's negligent and wanton acts and omissions combined, concurred and coalesced with the wrongful acts and omissions of Defendants ALT and Cingular and others to cause or to contribute to cause Cotton's death.

79.    Together with Defendants ALT and Cingular, Defendant WesTower is jointly and severally liable for the death of Cotton.

80.    Defendant WesTower is also vicariously and legally responsible for the tortious acts and omission of its servants including, but

27

not limited to, the negligent and wanton acts of Defendant ALT, by and through its agents and employees, Josh Cook, Adam Waterman, Matt Deadmond, Jeff Silva, Nathan Ross, and Robert Camp, as well as its direct employees Jeremy Porch, Joe Williams, and Philip Cassel.

WHEREFORE, Plaintiffs demand judgment against Defendant WesTower for its negligent and/or wanton acts/omissions for the wrongful death of William Eugene Cotton, II and seek damages from Defendant WesTower pursuant to Ala. Code (1975) §§ 6-5-410 & 25-5-11 in an amount to be determined by a jury.

## COUNT FIVE:
## DEFENDANT WESTOWER, INC.

### NEGLIGENT AND WANTON
### FAILURE TO PROVIDE A SAFE WORKPLACE

81.    Plaintiffs adopt and re-allege the previous paragraphs as if fully stated herein.

82.    At all times pertinent to this suit, Defendant WesTower, via contractual agreement with Defendant ALT, possessed and/or reserved the right to exercise control or custody of the Talladega tower site where Cotton was killed.

83.   Pursuant to Ala. Code §25-1-1, et seq., Defendant WesTower was under the legal duty to ensure that the tower site where Cotton was killed was reasonably safe for others.

84.   Furthermore, pursuant to its contractually reserved right of control WesTower was under its own contractual obligation to ensure the Talladega tower site where Cotton was killed was reasonably safe for others.

85.   Pursuant to said duty, Defendant WesTower was obligated to do everything reasonably necessary to protect the life, health and safety of Cotton and others.

86.   Said duties were neither legally nor contractually delegable.

87.   Nevertheless, Defendant WesTower negligently and wantonly breached said legal and contractual duties.

88.   Defendant WesTower's negligent and/or wanton breach of these legal duties include the following:

    a.   WesTower failed to exercise reasonable care in its supervision of subordinate contractors over whom it controlled and/or retained the right to control, including, but not limited to, its decision to allow ALT to perform work overhead on the tower while others, including Cotton, were placed in danger of serious injury;

29

b.  WesTower failed to exercise reasonable care in its inspection of the methods used by ALT to hoist and lower material on the tower;

c.  WesTower failed to exercise reasonable care in the placement of barricades, signs and other warnings designed to protect others, including Cotton, from walking into danger;

d.  WesTower failed to exercise reasonable and ordinary care in that at failed to supply the reasonable and necessary equipment needed under the circumstances;

e.  WesTower failed to exercise reasonable and ordinary care to ensure the contracted obligations related to safe hoisting it imposed upon ALT were in fact followed by ALT or its crew members;

f.  WesTower failed to provide a reasonably safe method of ingress and egress to and from the tower site and/or structure.

88.  Said negligent and wanton acts and omission were the actual, proximate and direct cause of Cotton's death.

30

89.     Said wrongful acts and omissions were done with a willfull, reckless and/or conscious disregard for the safety of others including Cotton.

90.     Defendant WesTower's negligent and wanton acts and omissions combined, concurred and coalesced with the wrongful acts and omissions of Defendants ALT, Cingular and others to cause or to contribute to cause Cotton's death.

91.     Together with Defendants ALT and Cingular, Defendant WesTower is jointly and severally liable to Plaintiffs for the death of Cotton.

92.     Defendant WesTower is legally and vicariously liable for the tortious acts and omissions of its servants including, but not limited to, the negligent and wanton acts of Defendant ALT, by and through its agents and employees, Josh Cook, Adam Waterman, Matt Deadmond, Jeff Silva, Nathan Ross, and Robert Camp, as well as its direct employees Jeremy Porch, Joe Williams, and Philip Cassel.

WHEREFORE, Plaintiffs demand judgment against Defendant WesTower for its negligent and/or wanton acts/omissions for the wrongful death of William Eugene Cotton, II and seek damages from Defendant WesTower pursuant to Ala. Code (1975) §§ 6-5-410 & 25-5-11 in an amount to be determined by a jury.

## COUNT SIX:
## DEFENDANT CINGULAR WIRELESS, LLC

## NEGLIGENCE AND WANTONNESS

93.   Plaintiffs adopt and re-allege the previous paragraphs as if fully stated herein.

94.   Defendant Cingular was under both a legal and a contractual duty to exercise reasonable and ordinary care in its management, control and supervision of the Talladega tower site, including the work of its servants Defendants WesTower and ALT, and to ensure that the tower site was reasonably safe.

95.   Cingular was also under both a legal and contractual duty to adequately warn others, including Cotton, that materials were to be hoisted or lowered to or from the tower, in particular on March 10, 2006, and was under a duty to take the steps necessary to protect such persons from being exposed to hazards created by this overhead work.

96.   Defendant Cingular's contractual and legal duties were for the express or implied benefit of Cotton and others similarly situated.

97.   Nevertheless, Defendant Cingular negligently and wantonly breached these duties.

98.   Defendant Cingular's negligent and/or wanton breach of these legal and contractual duties include the following:

32

a.   Defendant Cingular negligently and wantonly supervised the actions of Defendants WesTower and ALT including the actions of ALT's employees, Josh Cook, Adam Waterman and Matt Deadmond, and WesTower's employees, Jeremy Porch, Joe Williams, and Philip Cassel;

b.   Defendant Cingular negligently and wantonly failed to adequately warn Cotton and others of dangers known to Defendant Cingular and hidden from Cotton and others; and,

c.   Defendant Cingular negligently and wantonly exercised control and/or maintained the right of control over the subject job site so that others, including Cotton, were caused or allowed to be working in an unreasonably dangerous environment, particularly, when materials were hoisted and/or lowered to or from the subject tower while the only available path of ingress and egress to and from the tower site and/or structure was below a hoisted load.

33

99.    Said negligent and wanton acts and omission were the actual, proximate and direct cause of Cotton's death.

100.    Said wrongful acts and omissions were also done with a willful, reckless and conscious disregard for the safety of others including Cotton.

101.    Defendant Cingular's negligent and wanton acts and omissions combined, concurred and coalesced with the wrongful acts and omissions of Defendants ALT and WesTower and others to cause or to contribute to cause Cotton's death.

102.    Together with Defendants ALT and WesTower, Defendant Cingular is jointly and severally liable for the death of Cotton.

103.    Defendant Cingular exercised control and/or reserved the right to control the method and manner in which ALT, WesTower, Josh Cook, Adam Waterman, Matt Deadmond, and others performed work at the Talladega tower site including but not limited to control over the manner in which material was hoisted or lowered, the equipment used to hoist and lower, the timing of which material was to be hoisted and/or lowered, the placement of, or failure to place, adequate warnings and barricades at the tower, and control over the safety procedures observed at the tower site.

104.    Defendant Cingular is vicariously and legally responsible for the tortious acts and omissions of its servants including, but not limited to,

34

the negligent and wanton acts of Defendant ALT and its employees Josh

Cook, Adam Waterman, Matt Deadmond, and Defendant WesTower and its

employees, Jeremy Porch, Joe Williams, and Philip Cassel.

WHEREFORE, Plaintiffs demand judgment against Defendant

WesTower for its negligent and/or wanton acts/omissions for the wrongful

death of William Eugene Cotton, II and seek damages from Defendant

WesTower pursuant to Ala. Code (1975) §§ 6-5-410 & 25-5-11 in an

amount to be determined by a jury.

**COUNT SEVEN:**
**DEFENDANT CINGULAR WIRELESS, LLC.**

**NEGLIGENT AND WANTON**
**FAILURE TO PROVIDE A SAFE WORKPLACE**

105.   Plaintiffs adopt and re-allege the previous paragraphs as if fully

stated herein.

106.   Defendant Cingular retained and/or reserved the right to

exercise control or custody of the Talladega tower site where Cotton was

killed.

107.   Defendant Cingular was under both a legal and a contractual

duty to ensure that the tower site where Cotton was killed was reasonably

safe for others working there.

35

108. Pursuant to said duty, Defendant Cingular was obligated to do everything necessary to protect the life, health and safety of Cotton and others.

109. Said duties were neither legally nor contractually delegable.

110. Nevertheless, Defendant Cingular negligently and/or wantonly breached said legal and contractual duties.

111. Said negligence and wantonness included the following:

    a.    Defendant Cingular failed to exercise reasonable care in its supervision of its contractors in allowing Defendant ALT to perform overhead work on the tower while others, including Cotton, were placed in danger of serious injury;

    b.    Defendant Cingular failed to exercise or maintain its control or reserved right of control over its contractors, including Defendants ALT and WesTower, and said failure caused or allowed unsafe and unreasonably dangerous methods and equipment to be used in the hoisting and/or lowering of material from the subject tower;

    c.    Defendant Cingular created and fostered a working environment where time and money took precedence over safety, and subcontractors including Defendants ALT and WesTower were caused or permitted to perform their overhead tower work at an unreasonable and dangerous pace;

    d.    Defendant Cingular failed to provide reasonable safeguards and reasonable supervision to ensure that proper hoisting methods and equipment were utilized;

    e.    Defendant Cingular failed to establish any procedures for communication and coordination with, among and between subcontractors to prevent employees of subcontractors from working in a hazardous environment created by other subcontractors;

    f.    Defendant Cingular failed to exercise reasonable care in the placement of barricades, signs and other adequate warnings designed to protect others, including Cotton, from walking into danger;

    g.    Defendant Cingular failed, although it was contractually and legally obligated to do so, to make reasonable

37

inspections of the premises, equipment and methods used
at the tower site;

h.     Defendant Cingular failed to exercise reasonable and
ordinary care in that at failed to supply the reasonable
and necessary equipment needed under the
circumstances;

i.     Defendant Cingular failed to exercise even slight care in
the management of the tower site so that a pattern of
reckless behavior was allowed to foster such that persons
and entities under the control of Defendant Cingular,
including Defendants WesTower and ALT, by an
through their respective employees, agents and/or
servants, failed to abide by reasonable safety standards
adopted by and among themselves, or to comply with
applicable industry standards or applicable federal safety
regulations; and,

j.     Cingular failed to provide a reasonably safe passage of
ingress and egress to and from the tower site and/or
structure.

38

112.   Said negligent and wanton acts and omission were the actual, proximate and direct cause of Cotton's death.

113.   Said wrongful acts and omissions were done with a reckless or conscious disregard for the safety of others including Cotton.

114.   Defendant Cingular's negligent and wanton acts and omissions combined, concurred and coalesced with the wrongful acts and omissions of Defendants ALT and WesTower and others to cause or to contribute to cause the Cotton's death.

115.   Together with Defendants ALT and WesTower, Defendant Cingular is jointly and severally liable for the death of Cotton.

116.   Defendant Cingular is legally and vicariously liable for the tortious acts and omissions of its servants including, but not limited to, the negligent and wanton acts of Defendant ALT, by and through the acts or omissions of its employees, agents or servants, Josh Cook, Adam Waterman, Matt Deadmond, Defendant WesTower, by and through the acts of omissions of its employees, agents or servants, Jeremy Porch, Joe Williams, and Philip Cassel, as well as for the negligent and/or wanton acts or omissions of its employees, agents or servants, Damon Depew, Don Stoehr, Gabe Gruszinski, and others.

WHEREFORE, Plaintiffs demand judgment against Defendant

WesTower for its negligent and/or wanton acts/omissions for the wrongful

death of William Eugene Cotton, II and seek damages from Defendant

WesTower pursuant to Ala. Code (1975) §§6-5-410 and 25-5-11 in an

amount to be determined by a jury.

Respectfully submitted,

/s/ Edward McF. Johnson
Dennis G. Pantazis
Edward McF. Johnson
Attorneys for the *Cotton* Plaintiffs

Of Counsel:
WIGGINS, CHILDS, QUINN AND PANTAZIS, LLC
The Kress Building
301 19th Street North
Birmingham, AL 35203
(205)254-1500

/s/ Clay J. Thomason
Bill Thomason ASB-7576-s79j
Clay J. Thomason ASB-1418-a63t
Attorneys for the *Cotton* Plaintiffs

Of Counsel:
THOMASON-MAPLES, LLC
Post Office Box 627
Bessemer, AL 35021
(205) 428-0702
fax  428-7890
billthomason@t-mlaw.net
claythomason@t-mlaw.net

Additional Counsel for *Cotton* Plaintiffs:

James A. Shands
205 20th Street North
Suite 500
Birmingham, AL 35203

Charles P. Gaines
Lucius S. Gaines
GAINES, GAINES, & RASCO
Post Office Box 275
Talladega, AL 35160

## JURY DEMAND

## PLAINTIFFS RESTATE THEIR DEMAND FOR TRIAL OF THIS CASE BY A STRUCK JURY

/s/ Edward McF. Johnson
Of Counsel

41

## CERTIFICATE OF SERVICE

I hereby certify that I have, on this the ___ day of October, 2007 served a copy of the foregoing on all counsel electronically via the CM/ECF system.

Patrick Norris
McDaniel, Bains & Norris, PC
Two Metroplex Drive, Suite 504
Birmingham, AL 35209

J. Mitchell Frost
Patrick Montgomery
Ferguson, Frost & Dodson, LLP
Post Office Box 430189
Birmingham, AL 35243-0189

M. Keith Gann
Huie, Fernabucq & Stewart, LLP
Three Protective Center
2801 Highway 280 South, Suite 200
Birmingham, AL 35223

Joe Dean
Dean & Barrett
Post Office Box 231
Opelika, AL 36803-0231

Roderick K. Nelson
Leslie M. Hand
Spain & Gillon, LLC
The Zinszer Building
2117 Second Avenue North
Birmingham, AL 35203

/s/ Edward McF. Johnson
OF COUNSEL

42

FILED
2008 Apr-23 AM 09:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

**U.S. District Court**
**Northern District of Alabama (Eastern)**
**CIVIL DOCKET FOR CASE #: 1:06-cv-01486-KOB**

Cotton et al v. Betacom Incorporated et al
Assigned to: Judge Karon O Bowdre
Member case: (View Member Case)
Cause: 28:1441 Petition for Removal- Wrongful Death

Date Filed: 07/28/2006
Jury Demand: Plaintiff
Nature of Suit: 360 P.I.: Other
Jurisdiction: Diversity

**Plaintiff**

**Jennifer Marie Cotton**
*as dependent minor child of William
Eugene Cotton II, who sues by and
through her mother and next friend
Patricia Ann Cotton*

represented by **Bill Thomason**
THOMASON - MAPLES LLC
1710 2nd Avenue North
PO Box 627
Bessemer, AL 35021
205-428-0702
Fax: 205-428-7890
Email: billthomason@t-mlaw.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charles P Gaines**
GAINES GAINES & RASCO PC
127 North Street
PO Box 275
Talladega, AL 35160
256-362-2386
Fax: 256-362-2391
Email: melissa@gainesrasco.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Clay J Thomason**
THOMASON - MAPLES LLC
1710 2nd Avenue North
PO Box 627
Bessemer, AL 35021
205-428-0702
Fax: 205-428-7890
Email: claythomason@t-mlaw.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dennis G Pantazis**
WIGGINS CHILDS QUINN &
PANTAZIS
The Kress Building
301 19th Street, North
Birmingham, AL 35203-3204



**EXHIBIT**
**G**

| 11/30/2007 | | ORDER granting in full (94) Motion for Leave to Take Video Deposition of Witness in Courtroom and Motion for Leave to Advance Witness Costs and Expenses in case 1:06-cv-01486-KOB; granting in full (84) Motion for Leave to Take Video Deposition of Witness in Courtroom and Motion for Leave to Advance Witness Costs and Expenses in case 1:06-cv-02055-KOB. The court directs Plaintiffs' counsel to confer with opposing counsel and court staff to confirm convenient dates for the video deposition to be taken in its jury room. Signed by Judge Karon O Bowdre on 11-30-07. Associated Cases: 1:06-cv-01486-KOB, 1:06-cv-02055-KOB(AMW, ) (Entered: 11/30/2007) |
| --- | --- | --- |
| 12/03/2007 | | ORDER denying (83) Motion for Leave to Amend Complaint in case 1:06-cv-01486-KOB; denying (73) Motion for Leave to Amend Complaint in case 1:06-cv-02055-KOB. The court finds that Plaintiffs have failed to demonstrate good cause for amending the complaint beyond the deadline of 12/1/06 set in the scheduling order. Although the motion says otherwise, the court finds that the proposed Second Amended Complaint does expand and/or add to the claims set forth in the original Complaint and First Amended Complaint. Signed by Judge Karon O Bowdre on 12-03-07. Associated Cases: 1:06-cv-01486-KOB, 1:06-cv-02055-KOB(AMW, ) (Entered: 12/03/2007) |
| 12/03/2007 | | ORDER denying (96) Motion to Quash in case 1:06-cv-01486-KOB; denying (86) Motion to Quash in case 1:06-cv-02055-KOB. Although some of Defendant's objections may be meritorious, the motion is denied because it fails to comply with section IV.B. of this court's Initial Order (7) and with section II. of this court's Scheduling Order (12) requiring discovery motions to affirmatively state all efforts to resolve the dispute without court intervention. Signed by Judge Karon O Bowdre on 12-03-07. Associated Cases: 1:06-cv-01486-KOB, 1:06-cv-02055-KOB (AMW, ) (Entered: 12/03/2007) |
| 12/06/2007 | | ORDER SETTING a Scheduling Conference in chambers on Tuesday, January 22, 2008 at 2:00 p.m. and SUSPENDING the Scheduling Order (doc. 62) deadlines in light of the appearance of new counsel for Defendant ALT, Inc. While this order suspends discovery deadlines, discovery may proceed throughout January. Signed by Judge Karon O Bowdre on 12-06-07. Associated Cases: 1:06-cv-01486-KOB, 1:06-cv-02055-KOB(AMW, ) (Entered: 12/06/2007) |
| 12/06/2007 | 99 | ORDER directing Clerk to notify proper officials regarding a video deposition to be taken in the court's jury room on 12/17/07 at 10:00 a.m. The party noticing and taking the depo is responsible for providing the court reporter, the videographer, and the video equipment. Signed by Judge Karon O Bowdre on 12/6/07. Associated Cases: 1:06-cv-01486-KOB, 1:06-cv-02055-KOB(SMH2, ) (Entered: 12/06/2007) |
| 12/17/2007 | | Minute Entry for proceedings held before Judge Karon O Bowdre : Status Conference related to deposition held on 12/17/2007. (Court Reporter Teresa Roberson.) Associated Cases: 1:06-cv-01486-KOB, 1:06-cv-02055-KOB(PRW) (Entered: 12/18/2007) |
| | | |

Motions
1:08-cv-00434-JEO Cotton et al v. AT&T Mobility, LLC et al

### U.S. District Court

### Northern District of Alabama

## Notice of Electronic Filing

The following transaction was entered by Gimenez, Enrique on 4/23/2008 at 9:46 AM CDT and filed on 4/23/2008

**Case Name:** Cotton et al v. AT&T Mobility, LLC et al
**Case Number:** 1:08-cv-434
**Filer:** AT&T Mobility, LLC
**Document Number:** 9

**Docket Text:**
MOTION to Dismiss by AT&T Mobility, LLC. (Attachments: # (1) Exhibit Case 06-148 Complaint# (2) Exhibit Case 06-148 First Amended Complaint# (3) Exhibit Case 06-1486 Order dated 12-5-06# (4) Exhibit Case 06-1486 Order dated 5-15-07# (5) Exhibit Case 06-1486 Scheduling Order dated 9-25-06# (6) Exhibit Case 06-1486 Plaintiffs' Motion for Leave to Amend Complaint dated 10-4-07# (7) Exhibit Case 06-1486 Order dated 12-3-07 (No D.E. -Text Only))(Gimenez, Enrique)

**1:08-cv-434 Notice has been electronically mailed to:**

Joseph R Duncan , Jr    jrd@hfsllp.com

M Keith Gann    mkg@hfsllp.com

Enrique J Gimenez    hgimenez@lfwlaw.com

Edward McFarland Johnson    ejohnson@wcqp.com

Dennis G Pantazis    ttodd@wcqp.com

Bill Thomason    billthomason@t-mlaw.net

Clay J Thomason    claythomason@t-mlaw.net

**1:08-cv-434 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1078951271 [Date=4/23/2008] [FileNumber=1407985-0

] [ac9e7d20501fd292e19fcea6d25fe11d508ae996877df0f2ea355c0e0fcff9d0524
10f4fab19d8da6faced0e3915c8041595737106299e56e98f6e142b23de7b]]
Document description:Exhibit Case 06-148 Complaint
Original filename:n/a
Electronic document Stamp:
[STAMP dcecfStamp_ID=1078951271 [Date=4/23/2008] [FileNumber=1407985-1
] [2568060abdb5bbbf299024f6324d333500ec12debdb28f1c97b0bd73247ca38c442
7f7b229259053fc50b4f27a120ac613e054480ef4d166b0a8ee27d3901761]]
Document description:Exhibit Case 06-148 First Amended Complaint
Original filename:n/a
Electronic document Stamp:
[STAMP dcecfStamp_ID=1078951271 [Date=4/23/2008] [FileNumber=1407985-2
] [8d7531009b13a0c294364469e4d44088ec49db2dd8dc844d719350fdb1e3ae8f8084
bcb76d0221e9947b4e22353a3503e07bee6b6f588e19caa9def6349ead3d9]]
Document description:Exhibit Case 06-1486 Order dated 12-5-06
Original filename:n/a
Electronic document Stamp:
[STAMP dcecfStamp_ID=1078951271 [Date=4/23/2008] [FileNumber=1407985-3
] [10c2805e35eac3c43b3283fe16784183ced1c60ec41f79efca25d00e12351650cb3
d1d214f5afce8662718eef39c028215380bc737cbf7fc8a72d5521bf2b785]]
Document description:Exhibit Case 06-1486 Order dated 5-15-07
Original filename:n/a
Electronic document Stamp:
[STAMP dcecfStamp_ID=1078951271 [Date=4/23/2008] [FileNumber=1407985-4
] [c10643ce5dae408435503a3c790bd61eb3b1a1440fd8f6d148481d6b55532b1a0e5
5bf8da154bb7b0abc8b2f9b75382eefb24f11795a5c4012f2146d2a629ae5]]
Document description:Exhibit Case 06-1486 Scheduling Order dated 9-25-06
Original filename:n/a
Electronic document Stamp:
[STAMP dcecfStamp_ID=1078951271 [Date=4/23/2008] [FileNumber=1407985-5
] [06b278d95a88a94634e485c6bc50fd63834dbe79dd8c4d2111b62418deb7c7a010a
1f6e7fb77dddfcc115a8185239dbed1928bf9f3bb92c603c898258526ab43]]
Document description:Exhibit Case 06-1486 Plaintiffs' Motion for Leave to Amend Complaint dated
10-4-07
Original filename:n/a
Electronic document Stamp:
[STAMP dcecfStamp_ID=1078951271 [Date=4/23/2008] [FileNumber=1407985-6
] [c27b6de2638934368d112d6479d0099467beb6c9cfa463685ef2062519370246f1e
980d473c511e06f424b3c30378b7ebaaf0cc22dc502841a9a7eb0e82c62a2]]
Document description:Exhibit Case 06-1486 Order dated 12-3-07 (No D.E. -Text Only)
Original filename:n/a
Electronic document Stamp:
[STAMP dcecfStamp_ID=1078951271 [Date=4/23/2008] [FileNumber=1407985-7
] [542833a4ea3b23f0d8ad0e64d3e3250a8d0bc785ce96b0b6c0f4a083daa2cfab0b0
97c6da10c4bef24ac939f6784c8a0a74985b96949aca941ad754c4b8e5c90]]