FILED
2008 May-19 PM 05:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT C



# U.S. Department of Labor
Occupational Safety & Health Administration

www.osha.gov    Search    Advanced Search | A

**Directives**

# CPL 02-00-124 - CPL 2-0.124 - Multi-Employer Citation Policy.

Directives - Table of Contents

- **Record Type:**           Instruction
- **Directive Number:**      CPL 02-00-124
- **Old Directive Number:**  CPL 2-0.124
- **Title:**                 Multi-Employer Citation Policy.
- **Information Date:**      12/10/1999

# OSHA INSTRUCTION

**U.S. DEPARTMENT OF LABOR**           **Occupational Safety and Health Administration**

| DIRECTIVE NUMBER: CPL 2-0.124 | EFFECTIVE DATE: December 10, 1999 |
|---|---|
| SUBJECT: Multi-Employer Citation Policy | |

## ABSTRACT

| | |
|---|---|
| **Purpose:** | To Clarify the Agency's multi-employer citation policy |
| **Scope:** | OSHA-wide |
| **References:** | OSHA Instruction CPL 2.103 (the FIRM) |
| **Suspensions:** | Chapter III, Paragraph C. 6. of the FIRM is suspended and replaced by this directive |
| **State Impact:** | This Instruction describes a Federal Program Change. Notification of State intent is required, but adoption is not. |
| **Action Offices:** | National, Regional, and Area Offices |

**Originating Office:**     Directorate of Compliance Programs

**Contact:**     Carl Sall (202) 693-2345
Directorate of Construction
N3468 FPB
200 Constitution Ave., NW
Washington, DC 20210

By and Under the Authority of
R. Davis Layne
Deputy Assistant Secretary, OSHA

---

## TABLE OF CONTENTS

I. Purpose

II. Scope

III. Suspension

IV. References

V. Action Information

VI. Federal Program Change

VII. Force and Effect of Revised Policy

VIII. Changes in Web Version of FIRM

IX. Background

    A. Continuation of Basic Policy

    B. No Changes in Employer Duties

X. Multi-employer Worksite Policy

    A. Multi-employer Worksites

    B. The Creating Employer

    C. The Exposing Employer

    D. The Correcting Employer

    E. The Controlling Employer

    F. Multiple Roles

---

I. <u>Purpose</u>. This Directive clarifies the Agency's multi-employer citation policy and suspends Chapter III. C. 6. of OSHA's Field Inspection Reference Manual (FIRM).

II. <u>Scope</u>. OSHA-Wide

III. <u>Suspension</u>. Chapter III. Paragraph C. 6. of the FIRM (CPL 2.103) is suspended and replaced by this Directive.

IV. <u>References</u>. OSHA Instructions:

- CPL 02-00.103; OSHA Field Inspection Reference Manual (FIRM), September 26, 1994.

- ADM 08-0.1C, OSHA Electronic Directive System, December 19, 1997.

V. <u>Action Information</u>

    A. <u>Responsible Office</u>. Directorate of Construction.

    B. <u>Action Offices</u>. National, Regional and Area Offices

    C. <u>Information Offices</u>. State Plan Offices, Consultation Project Offices

VI. <u>Federal Program Change</u>. This Directive describes a Federal Program Change for which State adoption is not required. However, the States shall respond via the two-way memorandum to the Regional Office as soon as the State's intent regarding the multi-employer citation policy is known, but no later than 60 calendar days after the date of transmittal from the Directorate of Federal-State Operations.

VII. <u>Force and Effect of Revised Policy</u>. The revised policy provided in this Directive is in full force and effect from the date of its issuance. It is an official Agency policy to be implemented OSHA-wide.

VIII. <u>Changes in Web Version of FIRM</u>. A note will be included at appropriate places in the FIRM as it appears on the Web indicating the suspension of Chapter III paragraph 6. C. and its replacement by this Directive, and a hypertext link will be provided connecting viewers with this Directive.

IX. <u>Background</u>. OSHA's Field Inspection Reference Manual (FIRM) of September 26, 1994 (CPL 2.103), states at Chapter III, paragraph 6. C., the Agency's citation policy for multi-employer worksites. The Agency has determined that this policy needs clarification. This directive describes the revised policy.

    A. <u>Continuation of Basic Policy</u>. This revision continues OSHA's existing policy for issuing citations on multi-employer worksites. However, it gives clearer and more detailed guidance than did the earlier description of the policy in the FIRM, including new examples explaining when citations should and should not be issued to exposing, creating, correcting, and controlling employers. These examples, which address common situations and provide general policy guidance, are not intended to be exclusive. In all cases, the decision on whether

to issue citations should be based on all of the relevant facts revealed by the inspection or investigation.

B. <u>No Changes in Employer Duties</u>. This revision neither imposes new duties on employers nor detracts from their existing duties under the OSH Act. Those duties continue to arise from the employers' statutory duty to comply with OSHA standards and their duty to exercise reasonable diligence to determine whether violations of those standards exist.

X. <u>Multi-employer Worksite Policy</u>. The following is the multi-employer citation policy:

A. <u>Multi-employer Worksites</u>. On multi-employer worksites (in all industry sectors), more than one employer may be citable for a hazardous condition that violates an OSHA standard. A two-step process must be followed in determining whether more than one employer is to be cited.

1. <u>Step One</u>. The first step is to determine whether the employer is a creating, exposing, correcting, or controlling employer. The definitions in paragraphs (B) - (E) below explain and give examples of each. Remember that an employer may have multiple roles (see paragraph H). Once you determine the role of the employer, go to Step Two to determine if a citation is appropriate (NOTE: only exposing employers can be cited for General Duty Clause violations).

2. <u>Step Two</u>. If the employer falls into one of these categories, it has obligations with respect to OSHA requirements. Step Two is to determine if the employer's actions were sufficient to meet those obligations. The extent of the actions required of employers varies based on which category applies. Note that the extent of the measures that a controlling employer must take to satisfy its duty to exercise reasonable care to prevent and detect violations is less than what is required of an employer with respect to protecting its own employees.

B. <u>The Creating Employer</u>

1. <u>Step 1: Definition</u>: The employer that caused a hazardous condition that violates an OSHA standard.

2. <u>Step 2: Actions Taken</u>: Employers must not create violative conditions. An employer that does so is citable even if the only employees exposed are those of other employers at the site.

a. **Example 1**: Employer Host operates a factory. It contracts with Company S to service machinery. Host fails to cover drums of a chemical despite S's repeated requests that it do so. This results in airborne levels of the chemical that exceed the Permissible Exposure Limit.

**Analysis**: **Step 1**: Host is a creating employer because it caused employees of S to be exposed to the air contaminant above the PEL. **Step 2**: Host failed to implement measures to prevent the accumulation of the air contaminant. It could have met its OSHA obligation by implementing the simple engineering control of covering the drums. Having failed to implement a feasible engineering control to meet the PEL, Host is citable for the hazard.

  b. **Example 2:** Employer M hoists materials onto Floor 8, damaging perimeter guardrails. Neither its own employees nor employees of other employers are exposed to the hazard. It takes effective steps to keep all employees, including those of other employers, away from the unprotected edge and informs the controlling employer of the problem. Employer M lacks authority to fix the guardrails itself.

  **Analysis**: **Step 1:** Employer M is a creating employer because it caused a hazardous condition by damaging the guardrails. **Step 2:** While it lacked the authority to fix the guardrails, it took immediate and effective steps to keep all employees away from the hazard and notified the controlling employer of the hazard. Employer M is not citable since it took effective measures to prevent employee exposure to the fall hazard.

C. The Exposing Employer

 1. Step 1: Definition: An employer whose own employees are exposed to the hazard. See Chapter III, section (C)(1)(b) for a discussion of what constitutes exposure.

 2. Step 2: Actions taken: If the exposing employer created the violation, it is citable for the violation as a creating employer. If the violation was created by another employer, the exposing employer is citable if it (1) knew of the hazardous condition or failed to exercise reasonable diligence to discover the condition, and (2) failed to take steps consistent with its authority to protect is employees. If the exposing employer has authority to correct the hazard, it must do so. If the exposing employer lacks the authority to correct the hazard, it is citable if it fails to do each of the following: (1) ask the creating and/or controlling employer to correct the hazard; (2) inform its employees of the hazard; and (3) take reasonable alternative protective measures. In extreme circumstances (e.g., imminent danger situations), the exposing employer is citable for failing to remove its employees from the job to avoid the hazard.

  a. **Example 3:** Employer Sub S is responsible for inspecting and cleaning a work area in Plant P around a large, permanent hole at the end of each day. An OSHA standard requires guardrails. There are no guardrails around the hole and Sub S employees do not use personal fall protection, although it would be feasible to do so. Sub S has no authority to install guardrails. However, it did ask Employer P, which operates the plant, to install them. P refused to install guardrails.

  **Analysis**: **Step 1**: Sub S is an exposing employer because its employees are exposed to the fall hazard. **Step 2**: While Sub S has no authority to install guardrails, it is required to comply with OSHA requirements to the extent feasible. It must take steps to protect its employees and ask the employer that controls the hazard - Employer P - to correct it. Although Sub S asked for guardrails, since the hazard was not corrected, Sub S was responsible for taking reasonable alternative protective steps, such as providing personal fall protection. Because that was not done, Sub S is citable for the violation.

  b. **Example 4:** Unprotected rebar on either side of an access ramp presents an impalement hazard. Sub E, an electrical subcontractor,

does not have the authority to cover the rebar. However, several times Sub E asked the general contractor, Employer GC, to cover the rebar. In the meantime, Sub E instructed its employees to use a different access route that avoided most of the uncovered rebar and required them to keep as far from the rebar as possible.

**Analysis**: **Step 1**: Since Sub E employees were still exposed to some unprotected rebar, Sub E is an exposing employer. **Step 2**: Sub E made a good faith effort to get the general contractor to correct the hazard and took feasible measures within its control to protect its employees. Sub E is not citable for the rebar hazard.

D. The Correcting Employer

1. Step 1: Definition: An employer who is engaged in a common undertaking, on the same worksite, as the exposing employer and is responsible for correcting a hazard. This usually occurs where an employer is given the responsibility of installing and/or maintaining particular safety/health equipment or devices.

2. Step 2: Actions taken: The correcting employer must exercise reasonable care in preventing and discovering violations and meet its obligations of correcting the hazard.

    a. **Example 5:** Employer C, a carpentry contractor, is hired to erect and maintain guardrails throughout a large, 15-story project. Work is proceeding on all floors. C inspects all floors in the morning and again in the afternoon each day. It also inspects areas where material is delivered to the perimeter once the material vendor is finished delivering material to that area. Other subcontractors are required to report damaged/missing guardrails to the general contractor, who forwards those reports to C. C repairs damaged guardrails immediately after finding them and immediately after they are reported. On this project few instances of damaged guardrails have occurred other than where material has been delivered. Shortly after the afternoon inspection of Floor 6, workers moving equipment accidentally damage a guardrail in one area. No one tells C of the damage and C has not seen it. An OSHA inspection occurs at the beginning of the next day, prior to the morning inspection of Floor 6. None of C's own employees are exposed to the hazard, but other employees are exposed.

    **Analysis: Step 1:** C is a correcting employer since it is responsible for erecting and maintaining fall protection equipment. **Step 2:** The steps C implemented to discover and correct damaged guardrails were reasonable in light of the amount of activity and size of the project. It exercised reasonable care in preventing and discovering violations; it is not citable for the damaged guardrail since it could not reasonably have known of the violation.

E. The Controlling Employer

1. Step 1: Definition: An employer who has general supervisory authority over the worksite, including the power to correct safety and health violations itself or require others to correct them. Control can be established by contract or, in the absence of explicit contractual

provisions, by the exercise of control in practice. Descriptions and examples of different kinds of controlling employers are given below.

2. <u>Step 2: Actions Taken</u>: A controlling employer must exercise reasonable care to prevent and detect violations on the site. The extent of the measures that a controlling employer must implement to satisfy this duty of reasonable care is less than what is required of an employer with respect to protecting its own employees. This means that the controlling employer is not normally required to inspect for hazards as frequently or to have the same level of knowledge of the applicable standards or of trade expertise as the employer it has hired.

3. <u>Factors Relating to Reasonable Care Standard</u>. Factors that affect how frequently and closely a controlling employer must inspect to meet its standard of reasonable care include:

    a. The scale of the project;

    b. The nature and pace of the work, including the frequency with which the number or types of hazards change as the work progresses;

    c. How much the controlling employer knows both about the safety history and safety practices of the employer it controls and about that employer's level of expertise.

    d. More frequent inspections are normally needed if the controlling employer knows that the other employer has a history of non-compliance. Greater inspection frequency may also be needed, especially at the beginning of the project, if the controlling employer had never before worked with this other employer and does not know its compliance history.

    e. Less frequent inspections may be appropriate where the controlling employer sees strong indications that the other employer has implemented effective safety and health efforts. The most important indicator of an effective safety and health effort by the other employer is a consistently high level of compliance. Other indicators include the use of an effective, graduated system of enforcement for non-compliance with safety and health requirements coupled with regular jobsite safety meetings and safety training.

4. <u>Evaluating Reasonable Care</u>. In evaluating whether a controlling employer has exercised reasonable care in preventing and discovering violations, consider questions such as whether the controlling employer:

    a. Conducted periodic inspections of appropriate frequency (frequency should be based on the factors listed in G.3.);

    b. Implemented an effective system for promptly correcting hazards;

    c. Enforces the other employer's compliance with safety and health requirements with an effective, graduated system of enforcement and follow-up inspections.

5. <u>Types of Controlling Employers</u>

   a. <u>Control Established by Contract</u>. In this case, **the Employer Has a Specific Contract Right to Control Safety**: To be a controlling employer, the employer must itself be able to prevent or correct a violation or to require another employer to prevent or correct the violation. One source of this ability is explicit contract authority. This can take the form of a specific contract right to require another employer to adhere to safety and health requirements and to correct violations the controlling employer discovers.

      (1)    **Example 6**: Employer GH contracts with Employer S to do sandblasting at GH's plant. Some of the work is regularly scheduled maintenance and so is general industry work; other parts of the project involve new work and are considered construction. Respiratory protection is required. Further, the contract explicitly requires S to comply with safety and health requirements. Under the contract GH has the right to take various actions against S for failing to meet contract requirements, including the right to have non-compliance corrected by using other workers and back-charging for that work. S is one of two employers under contract with GH at the work site, where a total of five employees work. All work is done within an existing building. The number and types of hazards involved in S's work do not significantly change as the work progresses. Further, GH has worked with S over the course of several years. S provides periodic and other safety and health training and uses a graduated system of enforcement of safety and health rules. S has consistently had a high level of compliance at its previous jobs and at this site. GH monitors S by a combination of weekly inspections, telephone discussions and a weekly review of S's own inspection reports. GH has a system of graduated enforcement that it has applied to S for the few safety and health violations that had been committed by S in the past few years. Further, due to respirator equipment problems S violates respiratory protection requirements two days before GH's next scheduled inspection of S. The next day there is an OSHA inspection. There is no notation of the equipment problems in S's inspection reports to GH and S made no mention of it in its telephone discussions.

      **Analysis: Step 1**: GH is a controlling employer because it has general supervisory authority over the worksite, including contractual authority to correct safety and health violations. **Step 2:** GH has taken reasonable steps to try to make sure that S meets safety and health requirements. Its inspection frequency is appropriate in light of the low number of workers at the site, lack of significant changes in the nature of the work and types of hazards involved, GH's knowledge of S's history of compliance and its effective safety and health efforts on this job. GH has exercised reasonable care and is not citable for this condition.

      (2)    **Example 7**: Employer GC contracts with Employer P to do painting work. GC has the same contract authority over P as Employer GH had in Example 6. GC has never before worked with P. GC conducts inspections that are sufficiently frequent in light of the factors listed above in (G)(3). Further, during a number of its inspections, GC finds that P has violated fall protection

requirements. It points the violations out to P during each inspection but takes no further actions.

**Analysis**: **Step 1**: GC is a controlling employer since it has general supervisory authority over the site, including a contractual right of control over P. **Step 2**: GC took adequate steps to meet its obligation to discover violations. However, it failed to take reasonable steps to require P to correct hazards since it lacked a graduated system of enforcement. A citation to GC for the fall protection violations is appropriate.

    (3)    **Example 8**: Employer GC contracts with Sub E, an electrical subcontractor. GC has full contract authority over Sub E, as in Example 6. Sub E installs an electric panel box exposed to the weather and implements an assured equipment grounding conductor program, as required under the contract. It fails to connect a grounding wire inside the box to one of the outlets. This incomplete ground is not apparent from a visual inspection. Further, GC inspects the site with a frequency appropriate for the site in light of the factors discussed above in (G)(3). It saw the panel box but did not test the outlets to determine if they were all grounded because Sub E represents that it is doing all of the required tests on all receptacles. GC knows that Sub E has implemented an effective safety and health program. From previous experience it also knows Sub E is familiar with the applicable safety requirements and is technically competent. GC had asked Sub E if the electrical equipment is OK for use and was assured that it is.

**Analysis: Step 1:** GC is a controlling employer since it has general supervisory authority over the site, including a contractual right of control over Sub E. **Step 2:** GC exercised reasonable care. It had determined that Sub E had technical expertise, safety knowledge and had implemented safe work practices. It conducted inspections with appropriate frequency. It also made some basic inquiries into the safety of the electrical equipment. Under these circumstances GC was not obligated to test the outlets itself to determine if they were all grounded. It is not citable for the grounding violation.

    b.    <u>Control Established by a Combination of Other Contract Rights</u>: Where there is no explicit contract provision granting the right to control safety, or where the contract says the employer does <u>not</u> have such a right, an employer may still be a controlling employer. The ability of an employer to control safety in this circumstance can result from a combination of contractual rights that, together, give it broad responsibility at the site involving almost all aspects of the job. Its responsibility is broad enough so that its contractual authority necessarily involves safety. The authority to resolve disputes between subcontractors, set schedules and determine construction sequencing are particularly significant because they are likely to affect safety. (NOTE: citations should only be issued in this type of case after consulting with the Regional Solicitor's office).

    (1)    **Example 9**: Construction manager M is contractually obligated to: set schedules and construction sequencing, require subcontractors to meet contract specifications, negotiate with

trades, resolve disputes between subcontractors, direct work and make purchasing decisions, which affect safety. However, the contract states that M does not have a right to require compliance with safety and health requirements. Further, Subcontractor S asks M to alter the schedule so that S would not have to start work until Subcontractor G has completed installing guardrails. M is contractually responsible for deciding whether to approve S's request.

**Analysis: Step 1:** Even though its contract states that M does not have authority over safety, the combination of rights actually given in the contract provides broad responsibility over the site and results in the ability of M to direct actions that necessarily affect safety. For example, M's contractual obligation to determine whether to approve S's request to alter the schedule has direct safety implications. M's decision relates directly to whether S's employees will be protected from a fall hazard. M is a controlling employer. **Step 2:** In this example, if M refused to alter the schedule, it would be citable for the fall hazard violation.

(2)    **Example 10**: Employer ML's contractual authority is limited to reporting on subcontractors' contract compliance to owner/developer O and making contract payments. Although it reports on the extent to which the subcontractors are complying with safety and health infractions to O, ML does not exercise any control over safety at the site.

**Analysis: Step 1:** ML is not a controlling employer because these contractual rights are insufficient to confer control over the subcontractors and ML did not exercise control over safety. Reporting safety and health infractions to another entity does not, by itself (or in combination with these very limited contract rights), constitute an exercise of control over safety. **Step 2:** Since it is not a controlling employer it had no duty under the OSH Act to exercise reasonable care with respect to enforcing the subcontractors' compliance with safety; there is therefore no need to go to Step 2.

c. Architects and Engineers: Architects, engineers, and other entities are controlling employers only if the breadth of their involvement in a construction project is sufficient to bring them within the parameters discussed above.

(1)    **Example 11**: Architect A contracts with owner O to prepare contract drawings and specifications, inspect the work, report to O on contract compliance, and to certify completion of work. A has no authority or means to enforce compliance, no authority to approve/reject work and does not exercise any other authority at the site, although it does call the general contractor's attention to observed hazards noted during its inspections.

**Analysis: Step 1:** A's responsibilities are very limited in light of the numerous other administrative responsibilities necessary to complete the project. It is little more than a supplier of architectural services and conduit of information to O. Its responsibilities are insufficient to confer control over the subcontractors and it did not exercise control over safety. The responsibilities it does have are insufficient to make it a controlling

CPL 02-00-124 - CPL 2-0.124 - Multi-Employer Citation Policy. Page 11 of 12

Case 1:06-cv-01486-KOB   Document 151-3   Filed 05/19/08   Page 12 of 13

employer. Merely pointing out safety violations did not make it a controlling employer. NOTE: In a circumstance such as this it is likely that broad control over the project rests with another entity. **Step 2:** Since A is not a controlling employer it had no duty under the OSH Act to exercise reasonable care with respect to enforcing the subcontractors' compliance with safety; there is therefore no need to go to Step 2.

(2)   **Example 12**: Engineering firm E has the same contract authority and functions as in Example 9.

**Analysis**: **Step 1:** Under the facts in Example 9, E would be considered a controlling employer. **Step 2:** The same type of analysis described in Example 9 for Step 2 would apply here to determine if E should be cited.

   d. Control Without Explicit Contractual Authority . Even where an employer has no explicit contract rights with respect to safety, an employer can still be a controlling employer if, in actual practice, it exercises broad control over subcontractors at the site (see Example 9). NOTE: Citations should only be issued in this type of case after consulting with the Regional Solicitor's office.

(1)   **Example 13**: Construction manager MM does not have explicit contractual authority to require subcontractors to comply with safety requirements, nor does it explicitly have broad contractual authority at the site. However, it exercises control over most aspects of the subcontractors' work anyway, including aspects that relate to safety.

**Analysis: Step 1:** MM would be considered a controlling employer since it exercises control over most aspects of the subcontractor's work, including safety aspects. **Step 2:** The same type of analysis on reasonable care described in the examples in (G)(5)(a) would apply to determine if a citation should be issued to this type of controlling employer.

F. Multiple Roles

   1. A creating, correcting or controlling employer will often also be an exposing employer. Consider whether the employer is an exposing employer before evaluating its status with respect to these other roles.

   2. Exposing, creating and controlling employers can also be correcting employers if they are authorized to correct the hazard.

Directives - Table of Contents

Back to Top                                            www.osha.gov

Contact Us | Freedom of Information Act | Customer Survey
Privacy and Security Statement | Disclaimers

CPL 02-00-124 - CPL 2-0.124 - Multi-Employer Citation Policy. Page 12 of 12

Case 1:06-cv-01486-KOB   Document 151-3   Filed 05/19/08   Page 13 of 13

Occupational Safety & Health Administration
200 Constitution Avenue, NW
Washington, DC 20210